JENNIE GOSSETT, a Free Dealer, Formerly JENNIE ULLEN-DORFF, v. EUGENE ULLENDORFF, *et al.,* and the FLORIDA NATIONAL BANK & TRUST COMPANY AT MIAMI, as Trustee.

154 So. 177.

Division A.

Opinion Filed March 5, 1934.

*Mitchell D. Price & Charles W. Zaring,* for Appellant; *Norris McElya,* for Appellees.

ELLIS, J.—The appeal in this case is taken from two orders of the chancellor. One was made November 1, 1932, denying a motion by the complainant to strike certain parts of the separate answers of Eugene Ullendorff and Florida National Bank & Trust Company. The other order denied a motion of the complainant to set aside a decree *pro confesso* entered by the clerk of the court against the complainant on a portion of the answer of Eugene Ullendorff in which was set up a counter claim, or matter in the nature of such a claim. The order *pro confesso* was entered by the clerk on October 19, 1932, and rested upon the recitation in the order that complainant's plea or answer by stipulation between the parties should have been filed on October 3, 1932, and the complainant had failed to interpose such a plea or answer.

Phillip Ullendorff died in the city of Miami on the 9th day of September, 1923. He left a widow, Jennie Ullendorff, who afterwards married Claude P. Cossett, but she lives separately and apart from him, and is a free dealer under the laws of Florida. Two children also survive Phillip Ullendorff. Their names are Eugene and Annette. According to the bill of complaint, which Mrs. Gossett filed in this cause, the two children were born to Edgar and Lizzie Dodson in Nashville, Tennessee, on July 31, 1908. They were therefore twins, and were given to Mrs. Jennie Ullendorff in the City of Memphis, Tennessee, about a week after their birth. Those children were reared in the Ullendorff family and were known as Eugene and Annette. At the death of Phillip Ullendorff the children were then

fifteen years of age, and at the time the bill in this case was filed they were twenty-three years and eight months old, and Eugene had married and his wife is named Hallie.

Phillip Ullendorff was a man of some wealth, and left a will under which he undertook to dispose of his estate. The will provided for certain annuities for the wife and children until the children arrived at the age of thirty, and, after the payment of certain bequests which were numerous, the will directed that the remainder of his estate be divided between his wife and two children each to have a third part. The Biscayne Trust Company, a corporation, was named as executor and empowered to carry out the provisions of the will. It was also vested with power to sell and convey property without authority of a court order therefor and to carry on the management of the estate as completely as the testator might if he were living.

A codicil was executed by the testator a few months after he executed the will but it in no wise affects the questions involved in this proceeding. The will and codicil were proven and admitted to probate a few days after the death of the testator which occurred less than a month after the execution of the codicil.

The Biscayne Trust Company qualified as executor. Then the Guardian Trust Company, as liquidator of the Biscayne Trust Company, was appointed administrator *cum testamento annexo de bonis non* of the estate of Phillip Ullendorff. Thereafter J. H. Therrell was appointed liquidator of the Biscayne Trust Company, after which Morgan S. McCormick and the complainant were appointed and qualified as administrators *cum testamento annexo de bonis non* of the estate of Ullendorff.

On September 13, 1923, Jennie Ullendorff, by her solicitors, filed a petition in the County Judge's Court for Dade

County that the Biscayne Trust Company be appointed guardian of the estate and property of the minor children Eugene and Annette Ullendorff, and in which she represented herself to be the natural guardian of the children and waived the right to be appointed guardian of their estate.

On July 7, 1924, within twelve months after the probate of the will, Mrs. Ullendorff filed in the county judge's court a formal declaration under oath of her dissent from the provisions of the will and her election in lieu thereof to take a child's part of the estate of her deceased husband.

On the 15th day of April, 1932, she exhibited in the Circuit Court for Dade County her bill of complaint in this cause against Eugene Ullendorff and his wife Hallie, Annette Ullendorff and the Florida National Bank & Trust Company at Miami, as trustee, for an accounting as to the money and properties which had been received by Eugene and Annette Ullendorff of the estate of their foster father and to require the trustee, the Florida National Bank & Trust Company, and Eugene and Annette Ullendorff to pay to the complainant all moneys that they may have received in excess of the amount to which they have been entitled in former partitions and divisions of the estate, or that the amount found to be due to the complainant be paid out of the remainder of the estate now held by the trustee. There was a prayer for partition and an adjudication of the interests of the complainant and the two Ullendorff children in the estate and there was a prayer for general relief.

A motion to dismiss the bill was denied by the chancellor. Annette Ullendorff answered the bill admitting some of its allegations and disclaiming knowledge as to others but requiring strict proof of them.

The Florida National Bank & Trust Company answered the bill and so did Eugene Ullendorff and wife.

These answers contained averments which in substance were that the complainant, Mrs. Gossett, is estopped from denying that Eugene and Annette Ullendorff were her children and of her husband Phillip Ullendorff because in the petition for the appointment of a guardian, the allegations of which were supported by her oath, she represented that Eugene and Annette were the minor children of Phillip Ullendorff and that she, the petitioner, was the natural guardian of those children, and that the court of the county judge upon that petition adjudicated the children to be the children of Phillip and Jennie Ullendorff, a copy of the court's order being attached to the answer and made a part of it.

It is also averred that complainant is estopped to deny the relationship to the defendants Eugene and Annette Ullendorff because the complainant agreed to the distribution of the estate on the basis that the two children were the offspring of her marriage with Phillip, which agreement was made on May 18, 1927, and approved and ratified by the court a few days following, copies of which orders and agreement are attached to the answer as a part of it, and that the entire probate and guardianship proceedings have been conducted and distribution made on the adjudication that Eugene and Annette were the children of the complainant and her husband and further that the complainant is estopped by her conduct over a period of twenty years, during which she represented to the deceased Phillip Ullendorff and to the world at large that the two children, Eugene and Annette, were her children and those of her husband Phillip, who during his life regarded them as his children and disposed of his estate in ignorance of the fraud per-

petrated upon him by the complainant who is now setting up her misconduct and fraud upon the parties in thus representing them to be her children and those of her husband to obtain the relief she seeks. The answer of Eugene Ullendorff averred the same facts in substance.

The complainant's motions to strike those portions of the two answers containing those averments were denied. Those orders of the court form the basis of assignments of error numbered from one to eleven inclusive and are sought to be made the subject in the brief of "questions involved" numbered from 8 to 16, inclusive. The questions are not stated in the brief in the manner required by Rule 20 of the Supreme Court adopted November 5, 1930, and which went into effect on the first day of the January term, 1931, but we will nevertheless consider what we deem to be the question involved, which is:

In a proceeding of the character of the one at bar, may a widow in the circumstances related in the answers of the defendants quoted in the substance above obtain relief of the nature prayed for in the bill? To state the question differently, do the averments of the answers, the substance of which is stated above, constitute a defense to the relief sought by the complainant?

The motion to strike from an answer any part of it which may be deemed to be redundant, impertinent, or scandalous is controlled by the rule which requires the denial of the motion unless the matter sought to be stricken is wholly irrelevant, can have no bearing upon the equities and no influence upon the decision either as to the relief to be granted or the allowance of costs. See Sec. 23, Chapter 14658, Acts of 1931, known as the Chancery Act.

The inferences which may fairly be drawn from the averments in the answers which the complainant seeks to

strike from the record afford the test by which the sufficiency of the averments may be determined. There is an analogy between the rule by which the sufficiency of the averments of an answer are tested and the rule by which at law the sufficiency of a demurrer to the evidence is tested.

Applying that rule it may be reasonably inferred that the testator, Phillip Ullendorff, recognized Eugene and Annette Ullendorff as his children; that they were presented to him by his wife as his children. He accepted her statements as verity, reared them in his home, provided for them as a loving and affectionate parent would to the best of his ability; entertained for them the parental regard and affection that a normal father has for his children; had no other thought than that they were his own, and for fifteen years or longer was conscious of the progressive and growing affection which a father experiences in observing the development in mind, body and spirituality of his offspring. He experienced all the pride and love incident to paternity in dutiful children of good character and fine personality; the inspiration which a normal father experiences to provide for his children a comfortable home and suitable educational advantages and an estate for their enjoyment when he passes on.

In his will he made such provision for them out of his estate and doubtless experienced that consolation of spirit and mind afforded by his ability to provide for their necessities and comforts far into their future.

The children grew from infancy to maturity with no other thought than that Phillip Ullendorff was their father, in whom they trusted, had confidence in his judgment, pride in their relationship, and security in his loving and protecting care.

The children afforded during all the years to the date of

Ullendorff's death an increasing and developing bond of friendship between the man and his wife in which she found and enjoyed the security, protection and comfort of congenial relationship with a man of character, stability of purpose and patient and tolerant spirit, and one capable of making ample provision for the physical comfort of his family. During all those years the complainant enjoyed the benefits of her deception so far as her personal security and comfort were involved, and witnessed the growth and progress of filial and paternal affection between the children and their father, knowing or fearing all the while that the revelation of the truth which she alone possessed would not only disturb the happiness of their home but might react with disastrous results upon her by way of retribution for her false, treacherous and disloyal conduct.

The complainant at the probate of the will made no disclosure of the situation as she represented it to be in her bill of complaint, nor did she in filing her dissent from the provisions of the will make any such disclosure, nor did she reveal the truth as alleged when she filed a petition for the appointment of a guardian of the estate of the children, but on the other hand represented them under oath as Phillip Ullendorff's "two minor children," designating them by name and representing herself to be their "natural guardian." The court appointed the guardian of the children on that petition. The order of the court, of the county judge made and entered May 27, 1927, in which the report of the Biscayne Trust Company as executor was considered and approved and ratified and confirmed a partial distribution of the estate between the complainant and the two children upon the widow's petition who claimed then that on the basis of a child's part interest in the estate she was entitled to a third part, makes no reference to the alleged foisted

relationship. She remained silent for five years longer before apparently her cupidity proved stronger than her sense of dignified consistency, or her assumed maternal obligation.

The appellees invoked the doctrines of estoppel and *res adjudicata* and appellant's counsel, in their brief, discuss those doctrines as applicable to the situation.

Upon dissenting from the terms of the will the widow became entitled to dower in the lands, tenements and hereditaments of which her husband died seized and possessed (Sec. 5493, C. G. L., 1927), and being entitled to dower she had the right to elect to take a child's part in lieu thereof. See Sec. 5496. C. G. L., 1927. If there were no children the widow would be entitled to receive one-half of the estate. See Harrell v. Harrell, 8 Fla. 46; Benedict v. Wilmarth, 46 Fla. 535, 35 South. Rep. 84; Saxon v. Rawls, 51 Fla. 555, 41 South. Rep. 594.

If the complainant therefore is to be heard in denial of the paternity of Phillip Ullendorff with relation to the two children she would under the law of this State upon the establishment of the allegations of her bill be entitled to one-half of the real and personal property of which her husband died seized and possessed.

Do the principles of estoppel, *res adjudicata* or that a person seeking relief in equity must come into court with clean hands, or either one of such principles operate to preclude the complainant from the enjoyment of the right secured to her by the statute?

The circumstances are lacking in some of the elements of an estoppel *in pais* or by judgment. The element of injury to the persons invoking the estoppel cannot be said to exist in a material sense. Neither the bank trustees nor the two Ullendorff children may be said to have been injured by

the conduct of the complainant in the sense in which the term "injury" is usually used in the doctrine of estoppel, nor does the doctrine of *res adjudicata* or estoppel by judgment apply completely. The appointment of the guardian and the order affirming the partial distribution of the estate may not be said to be a judgment or decree in a cause litigated between the parties. Those orders proceeded upon the assumption of a fact as to the existence of which all persons agree. It was not a point in issue and certainly not litigated. The complainant was not benefited by the assumption that the two Ullendorff children were minor children of her husband and that she was their natural guardian, nor may it be said that they were in any wise injured thereby. Their positions have not been changed to their detriment by the representation that they were the offspring of Phillip Ullendorff and the complainant.

The circumstances set out in that part of the answer sought to be stricken present a new question so far as we have been able to ascertain and for which there is no precedent so far as we are advised, nor do the briefs of counsel supply us with analogous cases. The complainant appears in a court of chancery and seeks a certain relief in a matter in which it cannot be said that her course of conduct can be properly described as having been ingenuous, truthful or ethical. Her conduct consisted of a mixture of the elements of good and evil in which from the standpoint of the State's interest the latter predominated and from the standpoint of the material gain of the complainant her motives originated in a sinister impulse. From the viewpoint of the material advantages to the two children the element of good probably is present, but no one can say what the psychological reaction upon them may be on the discovery that the person whom they had all their lives

learned to love and revere as their father was not their parent in fact. So in a sense it is entirely possible that the two children have been injured by the deceitful or disingenuous conduct of the complainant during the years in which to gratify her own purposes she secured the assurance of personal and domestic satisfaction and comfort by her course of conduct.

By reason of the interest which the State has in the marital status of persons and the beneficial interests flowing to the State as an organized society from well ordered and satisfactory home conditions, the circumstances seem to us to be more analogous to that condition in which through public policy a wife is not permitted to deny the parentage of children born during wedlock. She cannot repudiate their legitimacy. That right belongs only to the father because maternity is never uncertain. She may only contest the identity of the child. See 7 C. J. 953.

So we hold that the complainant by her course of conduct through a period of more than twenty years, during which she daily and hourly declared to her husband and to the world that her husband was the father of the children, will not now be heard to say that he was not when by so doing she seeks to deprive the children of a portion of the inheritance which otherwise would be theirs. We hold, therefore, that there is no error in the chancellor's ruling refusing to strike the portions of the answers attacked.

The answer of Eugene and Hallie Ullendorff was filed on September 9, 1932. The motion to strike certain portions of that answer was filed October 3, 1932, and denied November 1, 1932. Pending the determination of that motion the solicitor for Eugene and Hallie Ullendorff filed a praecipe for an order *pro confesso* as to that portion of their answer which sought affirmative relief. The clerk entered the

order on October the 19th, the day on which the motion for the order was made. The motion to strike that portion of the answer was denied November 1, 1932. When the motion to dismiss the bill was denied the chancellor allowed the defendants until the rule day in September, 1932, "within which to file their pleadings" to the bill.

The bank answered September 9th and on the same day the Ullendorff defendants answered in which was contained the averments on which they prayed that the complainant Jennie Gossett be required to return to the bank as trustee the sum of $41,727.28 and interest, and that she be required to deliver to Eugene Ullendorff a diamond stick pin which had been bequeathed to him by Phillip Ullendorff and for an accounting from the complainant for all sums of money received by her between January, 1924, and July, 1927, and for an order requiring her to pay to him a sum equal to the balance due him upon the sums of money received by her.

The averments on which that prayer in the answer was based are in substance as follows: That the complainant by reason of her election to take a child's part is entitled only to one-third of the undivided corpus of the estate after the payment of all debts and expenses and the bank and trust company is bound to protect the interests of the defendants in the final accounting and distribution of the estate; that between January, 1924, and July, 1927, Jennie Ullendorff received $11,803.00 as to which the defendant has received no evidence of the accounting, nor has such evidence been filed in the court, nor any explanation for the expenditure of the money been made to the defendant, and attempts to obtain it by the defendant have been prevented by the complainant by threats to expose the circumstance of his birth which the complainant said would ruin his life; that the defendant was "entirely subordinated to the wishes and

activities of the said Jennie Gossett" in that regard and the defendant became convinced that she desired to procure the entire estate of Phillip Ullendorff for herself; that the complainant has in her possession a stick pin with a large "Coffee diamond surrounded by small stones which was the property" of Phillip Ullendorff and which he specially bequeathed to the defendant and that complainant refuses to deliver it to the defendant although she has been requested to do so; that in May, 1927, there was a partial distribution of the estate under which the complainant accepted $45,000.00 in cash and certain securities amounting to $170,000.00 and at the same time she agreed to a similar allotment of $70,000.00 in cash and $250,000.00 in securities to be distributed to the Biscayne Trust Company as trustee for Eugene and Annette Ullendorff. The following averment in that connection is made:

"That on the same day the order was entered approving this distribution, without the knowledge or approval of the Probate Court, the said Jennie Gossett with the connivance and assistance of the officers of the Biscayne Trust Company, substituted part of the security which she had accepted as her portion of the distribution for cash which has been set aside in a trust fund for Eugene and Annette Ullendorff, as follows:

"1. A mortgage by John C. Knight, dated March 12th, 1926, in the principal sum of $20,000.00;

"2. A mortgage by B. L. and E. J. Converse in the principal sum of $9,000.00;

"3. A mortgage by T. M. and J. Donn, dated May 18th, 1925, in the principal sum of $10,000.00.

"That the above three mortgages, after their separation from the undivided corpus of the estate, as set forth, were held by the Biscayne Trust Company in trust for Jennie

Gossett. That the substitution of these securities for the cash in the trust fund for the defendants, Eugene and Annette Ullendorff, was actually an exchange of trust properties between two trusts, for both of which said trusts the Biscayne Trust Company was trustee; that such exchange of trust properties is void; that it was part of the design and scheme of the said complainant, Jennie Gossett, with the assistance of officers of the Biscayne Trust Company, to substitute these securities for the cash belonging to the trust of the defendants, Eugene and Annette Ullendorff, and that the said sums' due upon the above three mortgages, less the amounts and allowances collected, including principal and interest, is Forty-one Thousand Seven Hundred and Twenty-seven and 48/100 ($41,727.48) Dollars; that these mortgages, *et cetera,* are actually the property of Jennie Gossett, and that she owes the trust of Eugene and Annette Ullendorff the said sum of $41,727.48."

Counsel for the complainant moved to set aside the order *pro confesso* upon eighteen grounds. Those grounds are designed to test the authority of the clerk to enter the order *pro confesso;* that the entry was improper because at the time it was made a motion to strike certain parts of the answer was on file and undisposed of; that the entry was not made on a rule day; that the matter set out in the answer on which the *pro confesso* order was made was not the subject of a set off or counter claim, and all such matters are proper subjects of investigation under the accounting which the court may order on the complainant's bill; that only the bank is in a position to demand the accounting sought by the defendant; that the prayers contained in the answer are not inconsistent with the prayer for an accounting contained in the bill; that the prayer seeks to set aside an order previously made by a court which had jurisdiction

of the matter; that the complainant has a complete defense to all matters set up in the defendant's answer as the basis of an accounting, and the order *pro confesso* is void.

Aside from the question of the authority of the clerk to enter an order *pro confesso* upon the counterclaim set up in the defendants' answer, if it should be regarded as a counterclaim, the order was entered when a motion relating to the answer of the defendant on the merits of the complainant's claim was pending in the court and was not disposed of by the court. If the motion to strike had been well founded and had been granted there would have been an end to the answer, the basis on which the defendant sought an accounting would have been swept away. So it was important that the motion to strike portions of the answer should have been decided before an attempt was made to obtain a *pro confesso* order upon other averments in the answer depending on the facts averred which the complainant sought to have stricken.

Usually the setting aside of a decree *pro confesso* rests in the court's sound discretion to be exercised according to the circumstances of each case. See Bongiovanni v. Spoto, 111 Fla. 144, 149 Sou. Rep. 10.

In the case at bar the circumstances in which the decree was entered, even if the clerk was authorized to enter it, were of such character that a refusal to set the order aside constituted an abuse of the discretion. The answer which contained the so-called counterclaim was attacked by a proper pleading and while the attack went only to a portion of the answer it affected the defendant's claim which constitutes his counterclaim except in so far as the possession of the diamond stick pin by the complainant is involved, and that matter is one which may be reached by an action of replevin or may be considered in the final decree de-

claring the basis of the final settlement of the estate and the portions to be set apart to each interested party.

At common law the rule as to entry of defaults is that a portion affecting a pleading should not be ignored and a default taken, unless a determination of it either way could not affect the right of the pleader to proceed. See Cobb v. Trammell, 73 Fla. 574, 74 South. Rep. 697.

In Dudley v. White, 44 Fla. 264, 31 South. Rep. 830, the practice of entering a default in an action at law for want of a plea or demurrer was regarded as analogous to the practice of entering a decree *pro confesso* in chancery for failure to file a plea, answer or demurrer to the bill. In the case at bar we are of the opinion that the motion of the complainant to strike portions of the defendant's answer was not frivolous and wholly without merit as to justify its being ignored, and while it was undisposed of the clerk's power to enter an order *pro confesso* was suspended.

We are of the opinion therefore that the order was improperly entered and should have been vacated on motion.

The order denying the motion to strike parts of the answer of Eugene Ullendorff and the Florida National Bank & Trust Company filed for record on November 1, 1932, is affirmed, but the order denying a motion to set aside the decree *pro confesso* is reversed. The complainant is allowed such reasonable time as the chancellor may direct in which to plead to or reply to the defendant's answer.

DAVIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and BUFORD, J. J., concur in the opinion and judgment.