122 So.2d 202 (1960)
Jeanette SANDERS, Joined by Her Next Friend, Bernice Sanders, Her Natural Mother, Appellants,
v.
Wayne YANCEY, Appellee.
No. 1583.
District Court of Appeal of Florida. Second District.
July 1, 1960.
Walter W. Manley, Lakeland, for appellants.
Oliver L. Green, Jr., Lakeland, for appellee.
ALLEN, Chief Judge.
The appellant instituted this action in the lower court by filing a complaint under sec. 742.011, Florida Statutes, F.S.A., in which she sought to establish that the appellee-defendant is the father of her unborn child. After various pleadings, interrogatories, admissions and affidavits were filed, the lower court entered summary final decree dismissing plaintiff's complaint with prejudice on the grounds that since the child was conceived while plaintiff was married, the plaintiff mother has no standing to have her child declared illegitimate nor to establish that one other than her former husband is the putative father.
The plaintiff and R.J. Anderson were married on March 19, 1958, and lived together until May, 1958, at which time they separated. Plaintiff began dating the defendant in June, 1958, and commenced having sexual intercourse with defendant sometime during August, 1958. Thereafter, plaintiff became pregnant in December, 1958.
The plaintiff obtained a divorce from her husband, R.J. Anderson on February 13, 1959, and this suit was instituted on April 2, 1959, by plaintiff to establish that her child is illegitimate and that the defendant is the actual father of the child. The defendant subsequently answered and requested certain admissions of the plaintiff. After the requested admissions were filed, the defendant moved for summary judgment.
The plaintiff filed her own affidavit and that of her former husband in opposition to *203 defendant's motion for summary judgment. Plaintiff's affidavit stated that after her separation from her former husband in May, 1958, she had no sexual relations with anyone other than the defendant and that her former husband did not have any opportunity to have sexual intercourse with her after the second week in May, 1958. The defendant's affidavit corroborated the facts set forth in plaintiff's affidavit and in addition the defendant offered to testify concerning the issue involved.
After stating that strong moral and sociological arguments existed on each side of the question, the chancellor decreed that under Florida law the mother cannot have a child, conceived in wedlock, declared to be illegitimate.
Plaintiff contends that her right to bring the instant action is granted by sec. 742.011, Florida Statutes, F.S.A., which provides that "Any unmarried woman who shall be pregnant or delivered of a bastard child, may bring proceedings in the circuit court, in chancery, to determine the paternity of such child." In construing the present statute, we note that Chapter 742, as it was originally enacted in 1828, provided that any "single woman who shall be pregnant or delivered of a child, who by law would be deemed and held a bastard" was entitled to bring an action for a limited recovery "not exceeding $50 yearly," for expenses attending birth, etc. This provision was changed by Chapter 26949, Laws of 1951, to read that any "unmarried woman who shall be pregnant or delivered of a bastard child may bring proceedings" and then provided for a more liberal allowance for the expenses involved.
In Wagner v. Baron, Fla. 1953, 64 So.2d 267, 269, 37 A.L.R.2d 831, the court, speaking through Justice Terrell, said there was "no reason for the New Act except to provide a reasonable living scale for bastard children." It would seem, therefore, that although the wording in the former provision has been changed from "single woman" to "unmarried woman," this change is not sufficient to merit a construction other than that placed on the wording of the former provision by the Supreme Court. See 4 Fla.Jur. Bastards, sec. 11.
The court in Ex parte Hayes, 25 Fla. 279, 6 So. 64, 65, stated in holding a bastardy complaint insufficient:
"* * * In this case the only essential averments are that the prosecutrix is a single woman, that on a certain day she was delivered of a live child, and that the petitioner is the child's father. All that may be true, and yet not make a case of bastardy. When the child was begotten she may have been, for aught that appears, a married woman, either of the petitioner or of some other man, and if she was it was not a bastard, for the law is that `a bastard is one that is not only begotten, but born, out of lawful matrimony.' 1Bl.Comm. 454. Hence the statute requires that it must be `a child who by law would be deemed and held a bastard.' * * *."
The Supreme Court in Gossett v. Ullendorff et al., 114 Fla. 159, 154 So. 177, was confronted with the propriety of a mother seeking to establish that her two children were not the children of her deceased husband and herself but actually had been given to her and her husband when the children were one week old by the natural parents. In commenting on the proceeding, the court stated that the legitimacy of children born during wedlock may be disputed by the father only, but not by the wife.
The legitimacy of an infant child was again presented to the Court in Eldridge v. Eldridge et al., 153 Fla. 873, 16 So.2d 163. In the Eldridge case the appellant husband first met the appellee wife on June 22, 1941. A courtship followed with frequent acts of sexual intercourse. They were married on July 16, 1941. The child was born February 9, 1942, a period of about 226 days from their first meeting. The husband *204 contended that he was not the father of the child.
The Gossett case was cited by the Court in holding that where a child is born in wedlock the law extends the right to the reputed father to contest the parentage but the mother has no such right, in that the mother may question only the identity of the child. The Court emphasized that even when the father questions the legitimacy of the child, one of the "strongest rebuttable presumptions known to the law is required to be overcome before the child can be bastardized. At common law the presumption was at one time virtually conclusive. Law of Illegitimacy by Hooper, p. 202; Anon v. Anon (1856), 22 Beav. 481, 23 Beav. 273." This principle was approved in In re Ruff's Estate, 159 Fla. 777, 32 So.2d 840, 175 A.L.R. 370, by holding that children born in wedlock are presumed to be legitimate, and the fact that a child conceived out of wedlock and that the marriage of its parents contracted before its birth was subsequently annulled, did not overcome the presumption.
The social philosophy that pervades the law of Florida on this question finds its origin in the English law, which except as inconsistent with the Constitution and laws of the United States and the state legislative acts, along with the statute laws of England of a general and not a local nature down to July 4, 1776, are in force in Florida. Chapter 2, Florida Statutes, F.S.A. In 1777 Lord Mansfield stated that the rule, founded in decency, morality, and policy, is that the declarations of the father or the mother cannot be admitted to bastardize the issue born after marriage. Goodright v. Moss, Cowp. pt. 2, pp. 591, 592, 594, 98 Eng. Reprint 1257; 11 Eng.Rule Cas. 518. Also in Rex v. Reading, (1734) Cast temp Hard 79, 82, 95 Eng.Reprint 49, the above rule was referred to as a rule which "most wisely and properly protects the sanctity of married intercourse and permits it not to be inquired into in any Court of law."
An excellent discussion of the instant problem is set forth in Kowalski v. Wojtkowski, 19 N.J. 247, 116 A.2d 6, 53 A.L.R. 2d 556. In the Kowalski case the mother brought an action to recover expenses attendant to the birth and support of her twin children against one who she alleged was the natural father. The mother, Irene Kowalski, married Stefan Z. Kowalski November 8, 1943. The mother alleged in her complaint that the children were conceived in the State of Florida and were born in the State of Florida on July 30, 1953, some 36 days after she had obtained a divorce in Florida from Stefan Z. Kowalski. The action was brought in New Jersey by the mother, claiming to be now a resident of New Jersey, and asserted that the defendant, a practicing physician in New Jersey, was the natural father of the twins. The New Jersey Supreme Court declared the law of Florida to be applicable and determined the question accordingly. After discussing the Florida cases which we have set forth previously, the New Jersey court held that the rule in Florida is that a mother cannot illegitimate her children born during wedlock but the husband or reputed father is not under the disability.
We note that a question similar to the instant case was apparently presented to the Third District Court of Appeal of Florida in Armstrong v. Snowden, Fla.App. 1958, 107 So.2d 619, 620. Although neither party cited the Armstrong case to this court, either in their briefs or on oral argument, apparently the Armstrong case adopted the interpretation of the Florida law as set forth in Kowalski v. Wojtkowski, supra. The court, in the Armstrong case, entered a per curiam affirmance and cited the following as a basis therefor:
"Affirmed. See §§ 742.011, 742.031 and 742.10, Fla. Stat., F.S.A.; Ex parte Hayes, 25 Fla. 279, 6 So. 64; Gossett v. Ullendorff, 114 Fla. 159, 154 So. 177; Eldridge v. Eldridge, 153 Fla. 873, 16 So.2d 163; Kowalski v. Wojtkowski, 19 N.J. 247, 116 A.2d 6, 53 A.L.R.2d 556."
*205 After a careful consideration of the cases cited herein along with the dictates of sound moral public policy, we conclude the rule in Florida to be that a mother is not permitted to have a child which has been conceived in wedlock declared to be illegitimate. Children which are conceived and born in lawful wedlock are legitimate. Likewise, children conceived during lawful wedlock are not rendered illegitimate by the subsequent dissolution of the marriage by death or divorce before the birth of the child. 4 Vernier American Family Laws, sec. 240. See also section 65.05, Florida Statutes, F.S.A., which provides that a decree of divorce shall not render illegitimate the children "born during the marriage" except when it is rendered upon the ground set forth in sec. 65.03(9) that states where either party had a husband or wife at the time of the marriage sought to be annulled.
For the reasons assigned herein the judgment of the lower court is affirmed.
Affirmed.
KANNER, J., and PATTERSON, TERRY B., Associate Judge, concur.