234 So.2d 145 (1970)
Henry G.S. SMITH, Appellant,
v.
Virginia Gardner WISE, Appellee.
Nos. 69-679, 69-1044.
District Court of Appeal of Florida, Third District.
April 14, 1970.
Rehearing Denied May 7, 1970.
*146 Horton & Schwartz, Goodman & Peterson, Miami, for appellant.
Duval & Bergstresser, Miami, for appellee.
Before PEARSON, C.J., and CHARLES CARROLL and BARKDULL, JJ.
PER CURIAM.
Proceeding under § 742.011 Fla. Stat., F.S.A.,[1] the appellee filed a complaint in the circuit court of Dade County on December 2, 1968, against the appellant, seeking a determination of the paternity of a child born to her on January 8, 1968, alleging that the child was born out of wedlock; that it was conceived "on or about the first week of April, 1967;" and that the defendant was the father of the child. The defendant filed an answer, in which he denied the allegations that the child was conceived in April of 1967, and that he was the father thereof.
Following trial of the cause before the court, judgment was entered on July 9, 1969, holding the child was illegitimate, that the appellant was the father, and directing him to reimburse the plaintiff for her expenses incident to the infant from the time of birth to the date of the judgment, and to pay a stipulated amount per month for the support of the child during its minority and any extraordinary medical expenses incurred therefor. The defendant appealed (appeal No. 69-679). Later, on November 20, 1969, the court entered an order awarding attorney fees to the plaintiff's attorneys in a certain amount and directing payment thereof to be made by the appellant within ten days, from which order the appellant filed appeal No. 69-1044. We find merit in the defendant's appeal from the judgment.
The testimony of the appellee revealed that she met the appellant in the summer of 1966; that she was married at the time but was separated from her husband; that she engaged in sexual intercourse with the appellant until she reconciled with her husband in September of 1966, which reconciliation continued to the end of the year; that thereafter she had sexual relations with the appellant in January, February and March of 1967, and that she obtained a decree of divorce from her husband on March 31, 1967; that after obtaining her divorce she had such relations with the appellant in the first week of April 1967, and for some time thereafter.
The child in question was born on January 8, 1968, 283 days after March 31, 1967, the date of the divorce. The appellee's treating obstetrician testified by deposition that when he first examined the appellee, on May 15, 1967, he diagnosed her condition as a pregnancy of eight weeks duration (indicating that conception had occurred during March), and on consideration of her pregnancy, including the birth of the child, expressed his opinion that the conception had occurred in the latter part of March 1967. In order to maintain the action under § 742.011 Fla. Stat., F.S.A., it was incumbent on the appellee to show that the child was a "bastard child." In this case the ruling of the trial court that the child was illegitimate was unwarranted under the established law applicable to the circumstances disclosed by the record.
A child conceived in wedlock, but born after termination of the marriage status, is legitimate. Ex parte Hayes, 25 *147 Fla. 279, 6 So. 64, 65. The presumption of the legitimacy of a child born (or conceived) while the mother is married is one of the "strongest rebuttable presumptions known to the law," and although legitimacy under such a condition may be challenged by the husband, and the wife (mother) may question the identity of the child, she cannot challenge its legitimacy. Gossett v. Ullendorff, 114 Fla. 159, 154 So. 177, 181; Eldridge v. Eldridge, 153 Fla. 873, 16 So.2d 163.
The mother of a child born in wedlock, or conceived while she was married (which includes a child born "within a competent time afterwards"), cannot maintain an action to have a man other than her spouse declared to be the father of the child. Sanders v. Yancey, Fla.App. 1960, 122 So.2d 202,[2] citing Kowalski v. Wojtkowski, 19 N.J. 247, 116 A.2d 6, 53 A.L.R.2d 556, in which the New Jersey Supreme Court recognized and applied Florida law on this subject. That court said (116 A.2d at 12): "It was held that at common law, absent a statutory modification, the mother of a child conceived in lawful wedlock, but unmarried when she brought her suit, did not have a right of action against the putative father to disestablish the legitimacy of her child and charge him with support as the natural father. It was said that the legitimacy of the plaintiff's own son `is so conclusively presumed that she cannot rebut it and thereby secure a cause of action.'" That principle of law has been adhered to by the Florida appellate courts in a number of decisions. See Sanders v. Yancey, supra, and cases cited in footnote No. 2.
In the Kowalski case the New Jersey court further stated (116 A.2d at 14):
"And it matters not that the marital bond was severed before the children were born. A legitimate child `is he that is born in lawful wedlock, or within a competent time afterwards.' 1 Black. Comm. 446. The rule has its genesis in the maxim of the civil law, pater est quem nuptiae domonstrant (the nuptials show who is the father). `A bastard, by our English laws, is one that is not only begotten, but born, out of lawful matrimony.' Ibid. 455. At common law a legitimate child is one `either born or begotten in wedlock;' e converso, an illegitimate child is one `neither begotten nor born in lawful wedlock.' Long, The Law of Domestic Relations (3rd ed.) sections 251, 277."
Under the law a child is held to have been conceived during marriage when it is born "within a competent time afterwards," that is, within the period in which it is generally recognized in medical science and knowledge that conception may have occurred during marriage, with reference to a given birth. In that connection the period for a full gestation birth, which is generally taken as 280 days, normally may be anywhere from 260 days to as much as 300 days or even more. That is a matter of fact, based on the operation of natural laws, of which a court may take judicial notice (In re McNamara's Estate, 181 Cal. 82, 183 P. 552, 555; and see Yarmark v. Strickland, Fla.App. 1967, 193 So.2d 212, 213). Therefore, the fact alone (upon which the appellee principally relied), that the birth in this instance occurred 283 days after the divorce, patently was insufficient and inconclusive upon which to judicially determine that the conception did not occur until after the divorce date of March 31, 1967.
*148 Aside from the circumstance just mentioned, and the equally inconclusive factors represented by the appellee's testimony that she had sexual intercourse with the appellant both in March and in April and her doctor's concession that the conception could have occurred in April, the record was lacking in sound evidence upon which to base the conclusion reached by the trial court that the conception took place after March 31, 1967, rather than prior thereto. On the contrary, in addition to the law of nature under which the conception of the child could have and may have occurred prior to the date of the divorce, there was the testimony of the treating obstetrician that in his opinion it did. Thus, the record rose no higher than to present a mere balance of probabilities as to whether conception occurred before the appellee's divorce (precluding her cause of action) or after the divorce, with the result that a choice by the court of one of those probabilities over the other would represent pure speculation.
This case, in another form presents a situation in close analogy to that upon which this court ruled in Yarmark v. Strickland, supra. There the mother of a child admitted having had intercourse with another man as well as with the one she claimed as the putative father, during the period in which conception could have occurred (which was observed in that case as being anywhere from 260 days to as long as 340 days prior to the normal full gestation birth which occurred there). In that situation it was held that a ruling that the defendant was the father of the child was not warranted since it would be based on guesswork.
Here, by her own admission the appellee had relations with the appellant during the month before and the month after her divorce, both months being well within the range of time when the conception could have taken place. By the Florida decisions the appellee was barred from using her testimony to prove that anyone other than her spouse was the father of the child, if the child was conceived in March of 1967 (during her marriage). It follows that in order for the appellee to maintain her suit, and for the court to hold the appellant was the father of the child, it was necessary for her to establish that the conception took place after rather than before March 31, 1967, but on the record presented in this case such a finding could not properly be made because it would be dependent upon pure guesswork and speculation.[3]
Accordingly, on appeal No. 69-679, the judgment appealed from is reversed, and the cause is remanded to the circuit court with direction to dismiss the complaint.
The result of our reversal of the judgment (on appeal No. 69-679) is that the fee order which was the subject of appeal No. 69-1044 also should be reversed. This is so because in a proceeding brought under Chapter 742 Fla. Stat., F.S.A., the authority to order the defendant to pay plaintiff's attorney fees, as provided for in § 742.031, is made to depend on the plaintiff's prosecution of her cause to a successful termination.
*149 On appeal No. 69-679, judgment reversed and cause remanded with direction.
On appeal No. 69-1044, order appealed from reversed.
NOTES
[1] "Any unmarried woman who shall be pregnant or delivered of a bastard child, may bring proceedings in the circuit court, in chancery, to determine the paternity of such child."
[2] See also, so holding, Illgen v. Carter, Fla.App. 1960, 123 So.2d 368; Kennelly v. Davis, Fla.App. 1968, 216 So.2d 795; aff'd. Kennelly v. Davis, Fla. 1969, 221 So.2d 415, cert. den. 396 U.S. 916, 90 S.Ct. 237, 24 L.Ed.2d 193. In the last cited case, the Supreme Court of Florida said: "The study of the cases and the statute leads us to conclude that Section 742.011, Fla. Stat., F.S.A., does not permit a woman to have her child declared illegitimate and thus receive support for said child from its putative father if she was married to another person at the time of conception."
[3] The decision in this case should not be construed to hold or imply an action could not in any instance be maintained under § 742.011 Fla. Stat., F.S.A. for determination of paternity of a child born after a divorce but not beyond the range of the period within which, according to medical science, it is recognized that conception normally could have occurred before the termination of the marriage. This is so because notwithstanding a birth situation as just described, the effect of a medically recognized possibility that conception may have occurred before the marriage was terminated could be avoided where from the nature of the pregnancy or birth, or from the condition of the mother or child at the time of birth, or otherwise by competent evidence, it could be sufficiently established that the period of gestation in such instance was one which, according to reasonable medical certainty, had its inception after the date of termination of the mother's prior married status.