270 So.2d 762 (1972)
PENTECOSTAL HOLINESS CHURCH, INC., a South Carolina Corporation, Appellant,
v.
Floyd M. MAUNEY et al., Appellees.
The FLORIDA CONFERENCE OF the PENTECOSTAL HOLINESS CHURCH, INC., a Non-Profit Florida Corporation, Appellant,
v.
Floyd M. MAUNEY et al., Appellees.
Floyd M. MAUNEY and Connie L. Mauney, His Wife, Appellants,
v.
The FLORIDA CONFERENCE OF the PENTECOSTAL HOLINESS CHURCH, INC., and Pentecostal Holiness Church, Inc., a South Carolina Corporation, Appellees.
Nos. 70-939, 70-946, 70-1084.
District Court of Appeal of Florida, Fourth District.
December 19, 1972.
Rehearing Denied January 15, 1973.
*764 William S. Turnbull, Orlando, for appellant The Florida Conference as to No. 70-946 and appellee as to Nos. 70-939 and 70-1084.
William E. Blyler of Patterson, Maloney & Frazier, Fort Lauderdale, for appellants Mauneys as to No. 70-1084 and appellees as to Nos. 70-939 and 70-946.
Sylvan B. Burdick of Burdick & Daves, West Palm Beach, for appellant Pentecostal Holiness Church as to No. 70-939 and appellee as to Nos. 70-946 and 70-1084.
WALDEN, Judge.
This consolidated appeal from three judgments results from the breach of a life support contract. The parties were Floyd M. Mauney and Connie Lee Mauney, his wife, the Board of Trustees of the Florida Conference of the Pentecostal Holiness Church and the Florida Conference of the Pentecostal Holiness Church, Inc., a non-profit corporation, which church group will be referred to as Florida. The Mauneys owned two nursing homes which had become increasingly difficult for them to operate due to their advancing age and failing health. They, having been members of the Florida church for some thirty-three years, suggested the conveyancing of these properties and others, worth approximately $200,000, to the church in return for an employment contract followed by a lifetime support contract for $1,000 per month. The Florida church was aware that the Mauneys had had license troubles and *765 that the nursing homes needed some upgrading work done on them.
The agreement between the Trustees of the Pentecostal Holiness Church and the Mauneys stipulated that plaintiffs would convey their property (two nursing homes, a private residence, fourteen lots and portions of six other lots in Broward County, plus a lot and house in North Carolina) to the trustees of Pentecostal Holiness Church "for the use and benefit of the ministry and membership of the Pentecostal Holiness Church." All property was to revert back to plaintiffs in the event of breach or bankruptcy of the trustees. The plaintiffs conveyed their property to the church in 1961 pursuant to this contract which was drawn by the Mauneys' attorney, George Richardson, Esquire.
The trustees made payments to the Mauneys as promised until 1966. Between February and August 1966 plaintiffs received less than the stipulated $1,000 per month payments. The payments then stopped because the Florida Church was nearly bankrupt. The nursing home properties and certain lots did not revert back to the plaintiffs at that time, as it should have done under the contract terms, because they had been converted and were not reachable. The Mauneys recovered the Fort Lauderdale and North Carolina homes by foreclosure.
In 1967 plaintiffs filed suit for damages and imposition of a constructive trust against the Florida Conference of the Pentecostal Holiness Church, only; Florida counterclaimed and asserted affirmative defenses, which can be summarized as estoppel, laches, indefiniteness of contract terms, unconscionability of the contract, lack of consideration and fraud concerning the suitability and condition of the nursing homes. Plaintiffs were given leave to amend their complaint and added the national conference, Pentecostal Holiness Church, Inc., a South Carolina corporation, hereafter called South Carolina, as a party. The theory of the charge against South Carolina was that South Carolina was the principal and Florida the agent in the acquisition of the Mauneys' property. The trial court struck Florida's affirmative defenses and counterclaim, and granted summary judgment against South Carolina and Florida and in favor of the Mauneys.
The final summary judgment was amended three times. Plaintiffs were awarded a judgment for past due payments, plus interest, against South Carolina and Florida. An amended judgment struck the interest award. The Mauneys moved for rehearing and to vacate that judgment. The motion was denied. The Mauneys appeal the order denying vacation of the first amended judgment. A second amended final judgment was filed, reinstating the interest award solely as to Florida and striking the interest award from South Carolina. It was vacated due to clerical error and an identical third judgment entered.
South Carolina and Florida appeal from the judgments entered against them. We reverse the summary judgment entered against South Carolina and remand with directions to enter summary judgment in favor of South Carolina and against the Mauneys. We reverse the summary judgment entered in favor of the Mauneys against Florida and remand for further proceedings consistent with the views herein expressed. The Mauneys' appeal is moot since the amended final judgment was vacated.
While the pleading complications are manifest, we think it would be confusing and not enlightening to make a detailed analysis of them and content ourselves with a mention of only those as may be required for dispositive treatment.
As stated, the summary judgment against South Carolina should be reversed and the cause dismissed as to them. South Carolina was never a party to the arrangement, never received or held title to plaintiffs' property, never exercised any control over the Florida property and never paid the plaintiffs or was looked to for payment by the plaintiffs.
*766 Repetitively, South Carolina was brought into the suit on the theory that it was the principal and Florida the agent in the acquisition of the Mauneys' property. It is necessary to review the Pentecostal Holiness Church structure to determine the relationship of the local and national church conferences in order to ascertain whether an agency relationship existed. If the church were organized as an episcopacy, a form of church government where the powers of government are vested in the Bishops who overlook and oversee the church concerns, an agency relationship would exist between South Carolina and Florida. In the congregational church organization each local body is a self-governing autonomous democracy, no agency relationship exists between the various church levels. The evidence regarding the church structure reveals without issue that the Pentecostal church is a combination of the episcopal and congregational forms; the local church has certain areas of authority that are granted to it by the biennial conference. The local Florida church is independent from the national conference, South Carolina, insofar as congregational financial affairs are concerned and decides such matters for itself; consequently no agency relationship existed between South Carolina, and Florida regarding financial affairs. Local churches have the right to purchase, control and dispose of property. The Florida Conference exercised specific and general control over its finances, and had complete ownership and control over plaintiffs' property.
The attorney who drew up the contract for the Mauneys stated that he did not know anything about the South Carolina Conference when he drew up the contract and only intended to obligate the Florida corporation. He testified,
"Q All right, sir. Now, at that time or at any time around that time of August 21st, 1961, had your clients, the Mauneys, or any of the other parties representing the Florida Conference of the Pentecostal Holiness Church made any reference to you concerning a South Carolina corporation?
"A No, not that I can remember.
"Q By word or deed or instrument or otherwise were you in connection with those dealings at all concerned with a South Carolina corporation known as the Pentecostal Holiness Church, a South Carolina corporation?
"A No, I was concerned with involving the Florida Conference and the corporation they had.
"Q All right, sir. As an attorney then, would it be fair to state that it was your complete understanding that there was no South Carolina corporation as a party in this transaction?
"A I didn't have any knowledge of a South Carolina corporation, and so I was mainly interested in, as I stated before, obligating the Florida Conference and their corporation.
"Q All right. And I take it then you were never asked by your clients, Mr. and Mrs. Mauney, to provide any  to give them any protection by any provision or otherwise against a South Carolina corporation in this transaction?
"A I was never given such a name to put in the instrument.
* * * * * *
"Q Now, prior to any of these letters referring to their having talked to a bishop in North Carolina, had the Mauneys ever indicated to you that their conduct in granting title to their properties down here to the Florida Conference was in any way premised upon any consideration or any dependency upon their part upon a South Carolina corporation?
"A Well, I'll have to go back to my original statement, and that was at the time the contract was written, we were attempting to or we were binding the Florida Conference and the corporation." (Emphasis supplied.)
*767 The Mauneys knew of South Carolina's existence, but understood that the contract bound Florida and that they were conveying their property to Florida. The depositions, testimony and evidence indicate South Carolina was not contemplated as a party to the agreement and the only intention of the parties was to obligate the Florida corporation. The contract phrase, "for the use and benefit of the ministry and membership of the Pentecostal Holiness Church," in the agreement was explained to mean Florida. This wording came directly from the Pentecostal Holiness Church Manual. The record reveals no doubt that the property was held in the name of the Florida Conference and that South Carolina had nothing to do with the exchange. The board of the national church, according to one Florida Conference board member, was never contacted during the time the Florida Conference was deciding whether to accept the Mauneys' offer; this was because the decision was purely within the decision making realm of the Florida Conference. That the South Carolina conference was not contemplated as a party is illustrated by the fact that South Carolina was not a party to the Mauneys' foreclosure suits to recover the two houses exchanged under the contract terms.
The critical testimony of the Mauneys concerning the issues is as follows:
Floyd Mauney said he was aware, in 1961, of the existence of South Carolina. He continued,
"Q And you knew they were not a party to the agreement?
"A I knowed that they was  they belonged to  I knowed that it was  I knew they was agents of the same party.
"Q So you knew that the South Carolina corporation was not named in the agreement and was not a party to the agreement?
"A Oh, yes, I knew it wasn't mentioned.
"Q Now, do you know of any time other than after Mr. Blyler came to represent you that you ever looked to the South Carolina corporation for legal responsibility?
"A I contacted them for some information and a favor, yes, sir.
"Q And you weren't looking to the South Carolina corporation to make the payments; were you?

"A No, sir." (Emphasis supplied.)
Connie Mauney was deposed. She told of difficulty in getting the monthly payments even before they were cut off completely. She complained to the Florida Conference at those times. She knew about South Carolina because she had wanted to verify the affiliation of the local church before she contracted to give them property.
Mrs. Mauney understood that the contract was binding on the Florida Conference. She understood that their property was conveyed to the Florida Conference.
As previously mentioned, the Mauneys have recovered both houses as the result of foreclosures. South Carolina was not a party to these proceedings either, as Mrs. Mauney said,
"Q And you made no request upon your lawyer that he join the South Carolina corporation; did you?
"A No, sir.
"Q You didn't regard the South Carolina corporation as being involved in that proceeding; did you?

"A Not being involved, but I knew they were an agent of the entire Conference, and I knew we could go to the Georgia 
"Q You knew that they weren't involved in the proceeding?
"A That's right. Yes, sir, right then.
"Q And you didn't attempt to involve them in the proceedings?

*768 "A No, sir.
"Q Was there any discussion about bringing them into the proceedings?
"A Not the South Carolina corporation.
"Q Because they weren't involved in the original agreement, is that correct?
"A The only thing we were involved in was to go to the bishop about it. We knew we could  We were supposed to 
"Q This was a private individual you went to see, the bishop?
"A No, sir. He is the bishop of the entire Pentecostal Holiness movement.
"Q I mean you didn't go to the bishop in the legal proceedings?
"A Oh, no, sir. No.
"Q You appealed to him as the bishop of the entire Church?
"A Yes, sir.
"Q But not as a party to your contract or as a party to the legal proceedings?
"A I don't think so."
There is an additional reason why South Carolina is not liable as a party. The agreement between the Mauneys and the Florida Conference was a sealed instrument. A sealed instrument executed by an agent must be in the name of the principal and purport to be his contract. South Carolina was not mentioned, therefore it is not covered. If the agreement purports to be executed as the agent's own instrument and is under his signature seal, it is not binding on the undisclosed principal, even though the other party to the instrument actually knows the principal and that the agent is contracting for him. Bellaire Securities Corp. v. Brown, Fla. 1936, 124 Fla. 47, 168 So. 625. Here the contract was under Florida's seal and signature and the evidence indicated no one thought South Carolina was to be bound by it. Action on a sealed instrument can only be maintained against those whose names are signed to it or appear on it. A sealed instrument is not enforceable against an undisclosed principal. McMullen v. McMullen, Fla.App. 1962, 145 So.2d 568; 29 Fla.Jur., Seals & Sealed Instruments, § 10 (1967); Annot. 32 A.L.R. 162 (1924).
The court recognized this point once and then somehow ignored it. South Carolina, after it had, against its will, been declared a principal by the court, filed a third party complaint against George Richardson for indemnification charging faulty draftsmanship as concerns the support agreement. The court granted Richardson's motion to dismiss with the following language:
"The contract which is the basis of Mauneys' claim against the South Carolina corporation is a sealed instrument which was not executed in the name of the South Carolina corporation nor does it profess to bind it.
"The movant has correctly argued that there is a lack of privity between Pentecostal Holiness Church, a South Carolina corporation, and Richardson, because the contract, drafted by Richardson, does not specifically identify the defendant, Pentecostal Holiness Church, a South Carolina corporation. Richardson cannot be liable to a party who did not employ him, and who at best may be an undisclosed principal to the contract.
"The Court finds, therefore, that there is no basis for a claim for indemnification by the Pentecostal Holiness Church, a South Carolina corporation against George Richardson, Jr.
"Accordingly, the Motion of George Richardson, Jr., to dismiss the third party complaint filed against him by Pentecostal Holiness Church, a South Carolina corporation, is granted."
It is clear from the undisputed facts in this case that South Carolina was not and should not have been held to be Florida's principal in their financial affairs and property holdings. Since the court determined *769 South Carolina was not a party to the sealed instrument and we agree, the conclusion is apparent that South Carolina is not liable as a matter of law.
The summary judgment as to Florida should be reversed and remanded due to two errors. First, it was error to strike all of Florida's affirmative defenses; only estoppel and laches were properly stricken. The defenses of estoppel and laches as asserted by Florida were immaterial to its answer, since they were claimed on behalf of South Carolina and, therefore, should have been stricken.
Pursuant to Rules 1.140(f) and 1.150, F.R.Civ.Proc., 30 F.S.A., the Mauneys moved to strike Florida's affirmative defenses on the following grounds: 1) estoppel and laches were invoked on behalf of other defendants and were sham pleadings; 2) indefiniteness of contract terms and unconscionability of contract terms are law, not fact, questions; 3) fraud, as alleged by Florida, although a fact question is not supported by the facts.
As its third affirmative defense, Florida asserted:
"That said contract, Plaintiffs' Exhibit A, establishes no value for the total consideration which Plaintiffs are to receive pursuant to the terms and conditions of said Agreement, and for that reason, said contract is fatally deficient as a matter of law and in its present form is unenforceable by Plaintiffs against any parties alleged to be liable to Plaintiffs under the terms and conditions thereof."
This defense deals with construction of the contract. Construction of a contract is always a question of law for the court, 7 Fla. Jur., Contract, § 73. Questions of law may be determined on a motion for summary judgment; however, just because this defense presented a question of law was not grounds to strike it as a defense. Statute of limitations and statute of frauds are things which must be affirmatively pleaded, but pose questions of law. Motion to strike is intended to remedy pleading defects such as redundancy, immateriality, impertinency, scandalous or sham matter. Sham pleadings are those which are inherently false and must have been known by the interposing party to be untrue.
A motion to strike matter as redundant, immaterial or scandalous should only be granted if the material is wholly irrelevant, can have no bearing on the equities and no influence on the decision. Westervelt v. Istokpoga Consol. Subdrainage Dist., Fla. 1948, 160 Fla. 535, 35 So.2d 641; Gossett v. Ullendorff, Fla. 1934, 114 Fla. 159, 154 So. 177. Indefiniteness of the contract terms was a valid defense which was neither redundant, immaterial, impertinent, scandalous, or sham and, therefore, was improperly stricken as an affirmative defense. The same is true of Florida's defense that the contract was unconscionable.
Fraud and misrepresentation must also be pleaded affirmatively. There is some basis for the defense of fraud revealed in the record, which, if true, could justify relief for Florida. Where the defense presents a bona fide question of fact, it is improper to grant a motion to strike. A.M. Kidder & Co. v. Turner, Fla. 1958, 106 So.2d 905. This defense, too, was sufficient to withstand a challenge via motion to strike.
Second, it was error to grant summary judgment because the affirmative defenses of fraud and misrepresentation were adequate to raise substantial fact questions and, therefore, summary judgment was premature.
Our overview and consideration of the issues of fact and law as they exist between the Mauneys and Florida leave us convinced that the ultimate decision as here made was premature. The essential requirement of law would be best served, we believe, by a trial in regular course of their several differences.
Plaintiffs-Mauneys' appeal in Case No. 70-1084 from the order denying their motion *770 to vacate the first amended final judgment is moot and, therefore, dismissed. The amended final judgment was subsequently amended.
The summary judgment awarded against Pentecostal Holiness Church, Inc., a South Carolina corporation, in Case No. 70-939 is reversed and remanded with instructions to enter summary judgment in favor of South Carolina and against the Mauneys. The summary judgment against the Florida Conference of Pentecostal Holiness Church in Case No. 70-946 is reversed and remanded for trial consistent with this opinion.
Dismissed as moot as to No. 70-1084; reversed and remanded with instructions as to No. 70-939; and reversed and remanded as to No. 70-946.
OWEN and MAGER, JJ., concur.