133 So.2d 62

STATE

v.

**J. C. GILES, Jr.**

**7 Div. 643.**

Court of Appeals of Alabama.

Sept. 5, 1961.

W. J. Tindle, County Sol., and Chas. M. Scott, Sp. Prosecutor, for appellant.

**364**

W. M. Beck, Fort Payne, for appellee.

HARWOOD, Presiding Judge.

This is an appeal from an order and judgment of the court below granting the defendant's motion to dismiss the charges against the defendant, and ordering the discharge of the defendant, in a bastardy proceeding.

In the trial below the prosecutrix testified that she had had sexual relations with the defendant on October 11, 1959, and on October 19, 1959. Her child was born on July 6, 1960.

However, on cross-examination the prosecutrix testified that she also had sexual relations with one Jake Oliver on October 11, 1959, and again on October 14, 1959.

She further testified that in November 1959, she wrote a letter to Mrs. Oliver, the mother of Jake Oliver, stating in effect that there was a possibility that Jake Oliver was the father of her expected child. The prosecutrix further testified that she consulted a lawyer and was advised to "charge it to Mr. Giles because he had money"; that

she had talked to Oliver and he had told her, "Let's work it out to the least embarrassment to the both of us," and he told her further that if he knew definitely the child was his, he would be more than willing to support both the prosecutrix and the child. However the prosecutrix had an attorney to search the county records and did not find that Oliver owned any property.

It further appears that prior to the bastardy proceedings, the prosecutrix was involved in litigation with the father of this appellant concerning the right of title to a house owned by the prosecutrix.

At the conclusion of the State's evidence, the attorney for the defendant moved to exclude the evidence and discharge the defendant because of the failure of the State to carry its burden of proof. The court then announced that it was granting the motion, dismissing the case, and discharging the defendant, and that the ruling was based on the ground that the evidence was insufficient on which the court could "base a judgment."

Thereafter the court entered a judgment, the pertinent parts of which read as follows:

"After the evidence was presented by the State, the Defendant moves the Court to dismiss the charges against the Defendant, and assigned as grounds, that the evidence was insufficient to support a Judgment against the Defendant, and that the State had failed to make out a case against the Defendant. After consideration of the Motion the Court granted same.

"It is therefore considered ordered and adjudged by the Court the motion to dismiss, be and the same is hereby granted. It is therefore considered ordered and adjudged by the Court that the Defendant be and he is hereby discharged."

Thereafter the State effected an appeal from the above judgment. Assignments of Error Nos. 2, 3, and 4 assert as error the

action of the court in excluding the State's evidence, and in rendering a judgment discharging the defendant. These assignments may be discussed together.

■ The trial below was before the court without a jury. While properly the court should not have excluded the evidence, and should simply have entered a judgment in favor of the defendant and ordering his discharge, yet by reference to the record it is clear that the intention of the court was to find in the defendant's favor. Certainly, any obscurity as to the court's intention is removed by the court's order discharging the defendant, and we will not reverse this judgment because of the technical defect in that portion of the oral pronouncement excluding the evidence. Peppers v. Agee Mercantile Co., 25 Ala.App. 548, 149 So. 876.

■ In view of the prosecutrix' testimony that she had had sexual relations with Jake Oliver at substantially the same time that she had had relations with the defendant, and her further testimony to the effect that she had written Oliver's mother as to the possibility of his being the father of her prospective child, and the further fact that thereafter she caused the county records to be searched and found that Oliver had no property, and was told that she should "go after" the defendant because he had money, the lower court was fully justified in discharging the defendant in the prosecution below.

■ Assignment of Error No. 1, is to the effect that the court erred in refusing to allow the prosecuting witness to testify who, in her opinion, was the father of the child involved in this case.

In argument under this assignment counsel relies upon a statement in Swindle v. State, 21 Ala.App. 462, 109 So. 369, 370, wherein it is stated, "There was no error in permitting the prosecutrix to testify that the accused was the father of her child. Brantley v. State, 11 Ala.App. 144, 148, 65 So. 678."

A statement in accord with that set forth in the Swindle case, supra, appears in the Brantley case, supra, and as authority therefor the court cites Kelly v. State, 133 Ala. 195, 32 So. 56, and Watts v. State, 8 Ala.App. 264, 63 So. 18, 20. In the Watts case, supra, it is stated, "There was no error in allowing a visual inspection of the child by the jury, or in permitting the prosecuting witness to testify that the defendant was the father of her child." Kelly v. State, supra, is again cited as authority for the above statement.

However, a reading of the Kelly case, supra, shows that the only question decided was that it is not error to allow a proffert of the child in a bastardy proceedings. Nowhere in the opinion is it stated that the mother may testify that a defendant was the father of her child.

To permit the prosecutrix to testify as to who is the father of her child is invasive of the province of the jury, or of the court in event the case is tried without a jury, and is in effect a conclusionary statement of the very issue to be determined by the jury, or the court, as the case may be. Such evidence therefore should not be permitted.

The evidence here sought was not predicated upon the idea that it was a travail accusation.

While in some of the New England States the rule seems to be that an accusation of paternity made by a woman in the throes of childbirth is admissible, the rule grew out of colonial statutes, and exists today as a result of express statutes, or by preservation of the former practice based on the early Colonial statutes. See Wigmore on Evidence, Vol. IV, 3rd Ed., Sec. 1141.

Alabama has no such statute, and in the absence of a statute, general common-law principles governing admission of evidence should compel the exclusion of the so-called travail accusation, and in those jurisdictions having no statutes such has been the rule. See Wigmore on Evidence, supra.

·' We have' written to the above point merely to correct the misleading statements to be found in the Swindle, Brantley, and Watts cases; supra.

█ However, an examination of the record shows that when on direct examination the prosecutrix was asked who in her opinion was the father of her child, the court overruled the defendant's objection to the question. Before the prosecutrix answered this question another question was interposed to her which was answered. Thereupon she was again asked her opinion as to who was the father of her child. Upon objection being interposed to this question, the record shows that counsel for the State informed the court that he was withdrawing the question.

In this state of the record there is nothing before us to review concerning the alleged error asserted in Assignment of Error No. 1, and we pretermit consideration of correctness of the court's ruling in the premises.

∴Affirmed.

CATES, J., concurs in the conclusion reached, but is of the opinion that there was no error in the court's action in excluding the evidence.