193 So.2d 212 (1966)
Ronald YARMARK, Appellant,
v.
Nancy STRICKLAND, Appellee.
No. 66-517.
District Court of Appeal of Florida. Third District.
December 20, 1966.
Rehearing Denied January 18, 1967.
Stephen F. Bazzano, Miami, for appellant.
Norman Francis Haft, Miami, for appellee.
Before HENDRY, C.J., and PEARSON and CARROLL, JJ.
CARROLL, Judge.
The appellee Nancy Strickland filed a suit in equity in the circuit court of Dade County on January 5, 1965, against the appellant Ronald Yarmark under Chapter 742 Fla. Stat., F.S.A., alleging him to be the father of a child born to her out of wedlock on September 14, 1964, seeking a decree determining him to be the father of the child and providing for child support and attorney fees. The cause was tried before the chancellor without a jury. A decree was entered in favor of the plaintiff, determining parentage as prayed for. On this appeal by the defendant it is contended, and we agree, that the decree is contrary to the manifest weight of the evidence.
The plaintiff's treating and attending obstetrician, and the treating pediatrician testified that in their opinion the child was not born prematurely, but was a normally developed baby born as a result of full gestation. Using the normal gestation period (280 days) the opinion expressed by *213 the obstetrician was the time of conception (with 90 percent medical certainty) was "from the 14th to the 18th or 19th of December 1963."
On behalf of the appellee stress was placed on the fact that upon the birth of this baby the hospital listed it as premature. The appellee argues that fact refutes the possibility that the child was conceived earlier than January, 1964. However, it was explained that babies which at birth weighed less than 5 1/2 pounds or measured less than 18 1/2 inches were classified as premature by the hospital routinely as a policy, and it was done in this instance because this baby which met the length standard, weighed only 5 pounds, 4 ounces, which was 4 ounces less than the weight standard so applied. The only special treatment given the baby as a result of such classification by the hospital was a more frequent feeding schedule which is called for. The weight of this baby was not material in determining the time of conception in the view of the doctors, and their testimony disclosed that even a baby which is born prematurely may weigh more than 5 1/2 pounds, and also that one which results from a full or normal period of gestation may weigh less than that figure.
The question of whether the baby was the result of a full gestation period or was born prematurely became important when it was disclosed that the plaintiff had intercourse with a man other than Yarmark in December of 1963 and first had intercourse with the appellant Yarmark "about the end of the first week in January," between the 4th and 7th of January of 1964, which was approximately 260 days prior to the date of birth.
Of vital significance in this case is the fact that on cross examination plaintiff testified she had sexual intercourse with a man other than Yarmark during October, November and December of 1963. Plaintiff missed her menstrual period in January 1964, which, according to her obstetrician should have occurred January 3rd to 6th, and it was his testimony that the normal and likely time for conception by her would be approximately 14 days after menstruation. Thus, assuming that conception occurred in this instance at a time corresponding to normal medical understanding, the opinion of the obstetrician that conception occurred in December is consistent, and an assumption that it occurred as a result of her intercourse with Yarmark between the 4th and 7th of January or thereafter would be inconsistent.
In reviewing this case we accept the plaintiff's statement that she first had intercourse with the defendant Yarmark in the early part of January, although it should be noted Yarmark testified that such occurrence was on the 27th or 28th of January 1964, and further testified that on that occasion plaintiff was upset and expressed concern that she had been made pregnant by another man.
As late as April 16, 1964, following a visit by plaintiff to her doctor, she informed a girl with whom she was sharing an apartment (who so testified) that she was in doubt as to who was the father of the child she was carrying, and stated it could be either of two men she then named, one being Yarmark and the other being the man with whom she admitting having had such relations during October, November and December of 1963.
The medical evidence revealed that although the normal gestation period is 280 days, it is recognized in medical science that a normal full gestation period may be anywhere from 260 days to as long as 340 days. Therefore, this baby, which the doctors regarded as one having been born following a full period of gestation, could have been conceived either in December or in the first part of January.
In the present case, where the plaintiff admitted having had intercourse with another man as well as with the defendant during the medically recognized time in which conception may have occurred, she *214 was not free to choose between them, and it was not permissible for plaintiff or for the court as the trier of the facts to guess which of the two men was the father, and for the court to determine parentage of the child on such speculation. Bishop v. State ex rel. Garnette, 136 Fla. 268, 186 So. 413, 415; State v. Giles, 1961, 41 Ala. App. 363, 133 So.2d 62; Commonwealth v. Rex, 147 Pa.Super. 121, 24 A.2d 98, 99; Commonwealth v. Young, 163 Pa.Super. 279, 60 A.2d 831; Commonwealth v. Jodlowsky, 163 Pa.Super. 284, 60 A.2d 836; Commonwealth v. Harbaugh, 201 Pa.Super. 360, 191 A.2d 844, 846.
In Commonwealth v. Rex, supra, the Pennsylvania Court said:
"Where bastardy is charged, a fact extremely important in the inquiry is whether the mother of the child had connection with others than the defendant at or about the time the child was begotten. If so, it is impossible for her to determine to which of them her conception is to be imputed. Com. v. Fritz, 4 Clark 219. The admission of a number of connections at about the time of conception destroys her competency as a witness to prove that the defendant is the father. It is only where such relations with others are denied by the mother and the proof of them rests upon the testimony of other witnesses that an issue for the jury is presented. Com. v. McCarty, 2 Clark 351; Com. v. Eaby, 52 Pa.Super. 619."
In a similar case, Commonwealth v. Young, supra, the court applied the rule announced above, saying:
"From the admissions of this prosecutrix, the father of her child might have been either Freeman or the defendant, and she cannot be permitted to choose between them. The Commonwealth's testimony therefore falls far short of proof of bastardy beyond reasonable doubt and does not rise higher than a mere balance of probabilities as to which of the two was responsible for her conception. Under the circumstances, certainly, defendant is entitled to a new trial at least. But in view of the fact that we could not permit any subsequent conviction of bastardy to stand because of the testimony of the prosecutrix at the present trial, we will make final disposition of the charge."
In Bishop v. State ex rel. Garnette, supra, it is disclosed that evidence offered in such a case that the woman had sexual intercourse with another man during the period in which conception of the child may have occurred would be relevant and material, and that if the trier of the facts found that such intercourse with another in fact took place, then the trier of the facts would not be able to determine which man was the father.[1] This is made to appear in a charge given in that case which the Florida Supreme Court approved as proper, reading in part as follows:
"In order to determine that somebody other than the defendant had the opportunity of being the father of the child you would have had to find that others during the period necessary to have begotten this child actually had sexual intercourse with her and if you should find from the evidence that others during that time actually had carnal intercourse with her and therefore you can't determine who was the father of the child of course you could not return a verdict of guilty against this defendant. As I have stated, the mere fact that there was [sic] times when the defendant was alone with someone else does not altogether or of itself prove actual carnal intercourse. You would have to find that others than the defendant within the time required *215 for the child to be begotten, had carnal intercourse with her. If you should find from the evidence that the defendant had carnal intercourse with the relatrix within the period of gestation, then you would have to find that others were having carnal intercourse with her and did have carnal intercourse with her during the time that there was an opportunity for them becoming the father of the child before you could render a verdict for the defendant." (Italics ours)
The clear implication and meaning conveyed through the charge as quoted above is that unless identification of the father is otherwise made possible through some tests or means afforded by advancing medical knowledge, establishment of the fact of intercourse with another at or about the time for conception precludes determination of which man is the father. This is so because in that circumstance a holding that one rather than the other is the father, would be a decision based on pure speculation.
It should be noted that this case is not one in which an identification of the father is indicated by some admissible test which may be furnished by advancing medical knowledge. Here the admission by the plaintiff in her testimony of the fact that she had intercourse with another man at or about the time conception may have occurred, places this case in the same position it would have if the fact of her intercourse with another had been placed in issue and found by the trier of facts to have occurred, and in such circumstance a judgment holding the defendant to be the father of the child was not warranted. Bishop v. State ex rel. Garnette, supra; Commonwealth v. Harbaugh, supra; Commonwealth v. Sloan, 177 Pa.Super. 178, 110 A.2d 827, 828.
We have not overlooked the presumption of correctness which is to be accorded the decree, and we bear in mind that where the evidence is heard by the chancellor and the witnesses observed, his findings should not lightly be set aside by an appellate court. On the other hand, when a decree is manifestly against the weight of the evidence or contrary to and not supported by the legal effect of the evidence, then it is the duty of the appellate court to reverse. Farrington v. Harrison, 95 Fla. 769, 116 So. 497; Kellogg v. Porter, 155 Fla. 287, 20 So.2d 59, 63; Shaffran v. Holness, Fla.App. 1958, 102 So.2d 35, 40. We reverse the decree which is appealed from in this case only upon concluding that it was against the manifest weight of the evidence and that on the facts of this case the holding of the chancellor that the defendant Yarmark was the father of the child was contrary to the legal effect of the evidence.
Reversed.
NOTES
[1] It should be noted that the quantum of proof, applicable at the time of the Bishop case, in proceedings under the prior bastardy statute, Comp.Gen.Laws 1927, § 5876, as in equity cases under the present statute (§ 742.011 Fla. Stat., F.S.A.) was a preponderance of the evidence. See Edmond N.E. v. State ex rel. Lula E., 25 Fla. 268, 6 So. 58.