RAYMONDE C. GELINAS *v.* BRAXTON T. NELSON

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, JS.

34

Argued April 3—decided May 23, 1973

*Jacob D. Zeldes,* with whom, on the brief, were *Robert S. Cooper* and *Lawrence W. Kanaga,* for the appellant (defendant).

*Edward F. Reynolds, Jr.,* assistant attorney general, with whom, on the brief, was *Robert K. Killian,* attorney general, for the appellee (plaintiff).

MacDonald, J. The plaintiff, Raymonde Gelinas, brought a paternity action against the defendant, Braxton T. Nelson, pursuant to § 52-435a of the General Statutes alleging that she gave birth on September 19, 1969, to a child and that the defendant was the father of the child. In answer to the defendant's motion for a more specific statement,

the plaintiff further alleged that the child was conceived on or about December 26, 1968. The case was tried to a jury which returned a verdict for the plaintiff and judgment was rendered awarding her $2006.06, payable $15 per week for support and $5 per week on the arrearage, in addition to counsel fees of $250 and costs. The defendant appealed to the Appellate Division of the Circuit Court, assigning error in the denial of his motion to set aside the verdict on the grounds (1) that the verdict was not supported by the evidence and (2) that the statutes governing paternity actions, §§ 52-435a—52-445 of the General Statutes, were unconstitutional. The Appellate Division of the Circuit Court found no error and we granted certification for appeal.

The first of several claims pressed by the defendant is that the evidence before the jury was insufficient to support its verdict that the defendant was the father of the child. The defendant makes no claim that in a paternity action the act of sexual intercourse requires corroboration, but he urges that as a principle of law where the mother admits having had sexual relations with the defendant and another man during the medically recognized time when conception may have occurred, neither she nor the jury, absent other evidence, should be permitted to "speculate" as to the parentage of the child. The defendant derives support for this principle from several cases decided in other jurisdictions. See *State* v. *Giles*, 41 Ala. App. 363, 133 So. 2d 62; *Yarmark* v. *Strickland*, 193 So. 2d 212 (Fla.); *Commonwealth* v. *Young*, 163 Pa. Super. 279, 60 A.2d 831. In urging that we apply this rule to the case at hand, the defendant claims that the plaintiff "in effect" admitted having had sexual intercourse with another

man during the time when conception might have occurred. The plaintiff, on the other hand, denies that such an admission was made. Each party in the appendix to his brief summarizes from the same portions of the transcript testimony which each claims supports his interpretation. To supplement the excerpts contained in the appendices and discover the exact language used by the witness, we have consulted the transcript as permitted, in such circumstances, by Practice Book § 721; see *Cappella* v. *New York, N.H. & H.R. Co.*, 154 Conn. 410, 412, 226 A.2d 394; *Baton* v. *Potvin*, 141 Conn. 198, 200, 104 A.2d 768.

The plaintiff, in relevant part, testified on direct examination as follows: That on September 19, 1969, she gave birth to a child, and she was single at the time; that she met the defendant in March, 1968, and that she went out "pretty steadily for about seven months" with him, two or three times a week and on weekends; that she first had intercourse with the defendant in April, 1968, and that the last time was on December 26, 1968; that she was positive of this latter date; that she had intercourse with the defendant approximately two times a week during the seven-month period that she went out with him; that her relationship with the defendant began "tapering off" when she began working for him; that she first learned that she was pregnant on February 12, 1969, when she consulted a doctor, and that she had a full-term pregnancy; that she knew that she conceived the child on December 26, 1968; that she told the defendant that he was the father of the child; that she had no doubt that the defendant was the father; and finally that she did not have intercourse with anyone else between April, 1968, and January, 1969.

On cross-examination the plaintiff testified in relevant part as follows: The first time that she told the defendant that he was the father of the child was in September, 1969, after the child was born; that she did not tell the defendant earlier that he was the father because "I wasn't sure yet"; that in response to the next question, "You weren't sure whether he was the father or you weren't sure you were pregnant?" she answered: "I wasn't sure he was the father"; that in response to the question, "Well, you say that you didn't have intercourse with anyone. If he is the only man you had intercourse with why weren't you sure?" she replied: "I said that I did not have intercourse with anyone else before January 1969"; that she told a lawyer that a man other than the defendant was the father of her child; that she was only positive that the defendant was the father of the child after the baby was born; that the defendant denied being the father of the child on two occasions, the first time was in February, 1969, when she told him that she was pregnant, and the second time was after the baby was born; and, finally, that when the defendant first denied being the child's father she had doubts then whether he was the father.

In reviewing the above testimony the Appellate Division of the Circuit Court stated: "The plaintiff maintained that she had not had intercourse with anyone else." We must agree with the defendant that the plaintiff never testified that "she had not had intercourse with anyone else." The plaintiff merely responded in the negative to the question, "Did you have intercourse with anyone else between April 1968 and until January 1969?" We also agree with the defendant that the testimony of the plaintiff is an admission that she had had intercourse with

another man after December 31, 1968. Although the plaintiff did not state categorically that she had had intercourse with another man after December 31, 1968, we hold that her testimony constitutes an admission of this fact because we are unable to find another reasonable explanation for her statements. This admission, however, does not aid the defendant because the plaintiff did not admit the date or dates when she had had intercourse with the other man. The exact time when the plaintiff had had intercourse is of importance because the act must have happened at or about the time when conception might have occurred in order for the defendant to avail himself of the rule stated earlier. Even using the standard deviation of 12.88 days from the average thirty-eight weeks duration of a full-term pregnancy[1] to define the limits of the time when conception might have occurred, it cannot be said that the plaintiff's statements are an admission that she had had intercourse with another man on or before the approximate date of January 8, 1969, thirteen days after the alleged act of intercourse with the defendant on December 26, 1968. Nowhere in the record or transcript is there evidence which establishes the date when the plaintiff had intercourse with the other man. From the plaintiff's statements it can be inferred as easily that the plaintiff had had intercourse after January 8, 1969, and that it was not until the child's birth, when it was discovered from the development of the baby that she had a full-term pregnancy, that the plaintiff was able to name

---

[1] In the defendant's brief this court was requested to take judicial notice of the "fact" that the average period of gestation is thirty-eight weeks from the date of conception and that the standard deviation from this average is 12.88 days. See Williams, Obstetrics (13th Ed.), pp. 218, 219–20.

unequivocally the father of the child. The fact that it was a full-term pregnancy was undisputed and no exception was taken nor objection made to the charge to the jury "that the normal period of gestation is nine calendar months and that the time of conception and the time of birth are that far apart." Moreover, the jury were specifically charged that there was no constancy of accusation. It might well be that as a matter of trial strategy defense counsel left unasked the question concerning the time when these acts with a third party or parties occurred hoping to create the inference that they took place in early January. Whatever the reason for the failure to clarify this issue, we can only conclude that in the absence of any evidence clearly indicating the time when acts of intercourse occurred with a person or persons other than the defendant, we cannot find error in the sustaining of the jury's conclusion that by a preponderance of the evidence the defendant was proved to be the father of the child.

The next claim of error is that the bastardy statutes, General Statutes §§ 52-435a—52-445, are unconstitutional because they arbitrarily distinguish the father of an illegitimate child both from the mother of an illegitimate child and from the father of a legitimate child, thereby denying him the equal protection of the laws. The defendant's claim is based on the assumption that the father of an illegitimate child, "[u]nlike other parents, . . . [has an] obligation to support his child [which] is imposed without regard to his own financial ability or the particular financial ability of the child's mother; and he bears this obligation without any of the normally concomitant rights of parenthood." This constitutional claim, however, was not raised at the

trial nor was it raised by the defendant's motion to set aside the verdict as "contrary to law." Since it is evident from the record that there are no "exceptional circumstances" which would warrant the relaxation of the rule that this court will not consider claimed errors on the part of the trial court unless there has been compliance with the provisions of § 652 of the Practice Book, we do not consider this claim. In so refusing we do not express an opinion as to the validity of the defendant's construction of the paternity statutes. We also conclude that the defendant's claim that his constitutional attack on the paternity statutes goes to the subject-matter jurisdiction of the court and therefore can be raised at any time is without merit. Were this not the case any statute which confers jurisdiction on a court could be attacked at any time on constitutional grounds with the result that § 652 of the Practice Book would be rendered useless. Furthermore, jurisdiction over bastardy actions is conferred by § 52-435a and not § 52-442, which is the source of the claimed unconstitutionality. No claim is made that § 52-435a in itself is unconstitutional.

The defendant's final claim of error is that the attorney general appeared in this action after final judgment in the Circuit Court without having moved to intervene as an interested party, and that the trial court was without power to grant a motion extending the time to file the attorney general's brief in the Appellate Division of the Circuit Court when the motion was filed after the time for filing his brief had expired. We first note that the defendant expressly declined to advance a claim of prejudice from the granting of the motion and that here, unlike the situation in *Mendez* v. *Mendez*, 160 Conn. 237, 278 A.2d 795, the state of Connecticut had a

real financial interest in the appeal because here the mother was receiving welfare and the state had been providing support payments for the child. We also note that in the defendant's memorandum in support of his objection to the attorney general's motion for extension of time to file his brief, the defendant raised only the issue concerning the trial court's power to grant an extension after the time for filing had expired. There is no indication from the record that the trial court was apprised of the defendant's objection to the intervention of the attorney general on the ground that such intervention was improper. Had such an issue been presented to the trial court it would have been afforded an opportunity to act formally regarding the right of the attorney general to intervene as a party. In connection with the trial court's action in granting the extension of time, we note that from the expiration of the time for filing the briefs only a few days had elapsed when the attorney general's motion was filed. In addition, the defendant had requested an extension of time to September 15, 1971, to file his brief and it was only when formal action had not been taken on his motion that he filed a brief and withdrew his motion. For these reasons, although we do not condone the procedural irregularities that are present here, we hold that they do not constitute reversible error in this case. Since the state of Connecticut had a clear interest in the outcome of the appeal and since the defendant has conceded that he can show no prejudice as a result of the intervention of the attorney general, we conclude that the irregularities were at most harmless error.

There is no error.

In this opinion the other judges concurred.