439 So.2d 955 (1983)
Lucy Ann HOLLIMAN and the State of Florida Department of Health and Rehabilitative Services, Appellants,
v.
Donald Frank GREEN, Jr., Appellee.
No. AR-184.
District Court of Appeal of Florida, First District.
October 13, 1983.
*956 Joseph R. Boyd and Michael L. Berry, Boyd & Smith, Tallahassee, and Chriss Walker, Fla. Dept. of Health and Rehabilitative Services, Tallahassee, for appellants.
Ralph Roberts, Roberts & Roberts, Jacksonville, for appellee.
LARRY G. SMITH, Judge.
We hold that trial court erred in dismissing appellants' amended complaint, which sought a determination of paternity of appellant Lucy Holliman's daughter, Amaris Bowen.
Appellants alleged that during the period of conception of Lucy Holliman's daughter, now seven years old, Lucy had sexual relations with her former husband and appellee, and no other man, and they asked the trial court to determine either the former husband or appellee to be the father of Lucy's daughter. The trial court dismissed the amended complaint against appellee because appellants were not able to allege facts which, if proven by clear and satisfactory evidence, would overcome the presumption that Amaris, who was born when Lucy was married to her former husband, was legitimate. We find that the trial court gave undue weight to the presumption of legitimacy at the pleading stage of this case, and also required undue specificity in the factual allegations of the complaint, considering the privilege of alternative pleading available under Rule 1.110(b), Florida Rules of Civil Procedure, and the scope of actions for determination of paternity under Section 742, Florida Statutes (1981), as augmented (particularly as to the case of HRS) by Sections 409.2551-409.2594, Florida Statutes (1981). See, also, Highland Insurance Company v. Walker Memorial Sanitorium and Benevolent Association, 225 So.2d 572, 576 (Fla. 2nd DCA 1969).
It is small wonder that the trial court dismissed the complaint against appellee in this case, given the allegation that Lucy had sexual relations with her husband (as well as appellee) at a time when the child could have been conceived. If the determination of paternity of a child conceived during wedlock should become no more than a kind of "shell game," then this area of our jurisprudence would indeed be in a deplorable state. This court in Yarmark v. Strickland, 193 So.2d 212 (Fla. 1st DCA 1966), no doubt held similar views when it declared that if either of two men could be the father of a child, the mother was not free to choose between them, and it was not permissible for the mother "or for the court as the trier of the facts to guess which of the two men was the father, and for the court to determine parentage of the child on such speculation." Id. at 214. We do not agree, however, that pronouncements such as appear in Yarmark would now preclude the filing of a complaint for determination of which of two possible men is a child's natural parent. We note that the Yarmark court itself limited the effect of its decision by distinguishing it from a case in which "identification of the father is indicated by some admissible test which may be furnished by advancing medical knowledge." Id. at 215. Later, in Roe v. Macy, 363 So.2d 616 (Fla. 1st DCA 1978), this court pointed out this distinguishing feature of Yarmark, that is, in Yarmark, "medical or scientific evidence was lacking." Id. at 617.
There can now be little doubt that medical knowledge has advanced far beyond that generally in use in paternity cases when Yarmark was decided. With the advent of human leukocyte antigen (HLA) testing, used in conjunction with red blood cell testing, it is now possible to determine the probability of paternity in excess of 90%. See, Carlyon v. Weeks, 387 So.2d 465, 466 (Fla. 1st DCA 1980).
*957 In addition to advances in medical science, there have been significant developments in the law relating to determination of paternity. One of the most notable cases reflecting changes in this area is Gammon v. Cobb, 335 So.2d 261 (Fla. 1976), in which the court held that a married woman has standing under Florida's paternity statute, Section 742.011, Florida Statutes (1981), to maintain a proceeding to establish that a man other than her husband was the natural father of children conceived and born to her during the existence of her marriage. The essence of this decision is that although the statute limits the right of action to "unmarried" females, the court found such a limitation unconstitutional. Although we recognize the distinctly different factual circumstances in Gammon (the mother alleged she had no contact with her legal husband for twenty years), we do not view this or other decisions as imposing an obstacle to the joinder in the same action of both the husband and another person alternatively alleged to be the child's father. The public policies underlying the enactment of legislation calling for state intervention in determining paternity and in enforcing the duty of support would seem to be best served by allowing the state's action to be taken in the most expeditious manner possible. In this case it appears to us that joinder of both likely fathers in the same action would be within the department's prerogatives. See, Section 409.2551, Florida Statutes, "Legislative intent."
The trial court's ruling sustaining appellee's objection to appellant's motion that he submit to HLA testing was grounded solely on the conclusion that appellants' complaint failed to state a cause of action against him. Under our decision today, that ruling no longer has validity, and must also be reversed. However, nothing in this opinion should be construed to preclude appellee from seeking a protective order on such grounds as he may deem appropriate. We express no opinion whether any motion for protective order should be granted or denied, because such a determination is beyond the scope of this appeal.
REVERSED.
WENTWORTH and JOANOS, JJ., concur.