CYNTHIA DiMAURO *v.* GERALD NATALINO
(4373)

DUPONT, C. J., BORDEN and DALY, Js.

Argued March 4—decision released July 21, 1987

*William F. Dow III,* for the appellant (defendant).

*Stephen J. McGovern,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellee (plaintiff).

DALY, J. The defendant appeals from the judgment rendered after a jury found that he is the father of the plaintiff's child. In a separate proceeding, the trial court then ordered him to pay monthly support until that child's eighteenth birthday, as well as arrearages to the state of Connecticut, attorney's fees and costs.[1] On appeal, the defendant claims the trial court erred (1) in denying his motions for a directed verdict and to set aside the verdict because of insufficient evidence, and (2) in refusing to instruct the jury as requested. We find no error.

In September, 1981, the plaintiff instituted a paternity action against the defendant alleging that he was the father of the child born to her on November 28, 1979. The defendant denied having had sexual relations with the plaintiff at any time in 1979 and specifically denied having them during the time of conception. He acknowledged that a sexual relationship had existed between the two during the "warmer months" of 1978. He further claimed that the plaintiff had admitted to

---

[1] The state of Connecticut is also a plaintiff in this action. The state's involvement is derived from requirements imposed on it by the federal government. See 42 U.S.C. § 602 (a) (26) (b). The mother of a child receiving public assistance is required to identify the child's father and, in the event that he does not acknowledge paternity, to bring an action against him. General Statutes §§ 46b-160, 46b-169. If the paternity action is successful and results in an order of support, as in this case, the moneys so awarded are paid directly to the state because the mother of a child on public assistance must assign her rights of support to the state. General Statutes § 17-82b; see *DeMace* v. *Whittaker,* 196 Conn. 413, 414–15, 493 A.2d 219 (1985); *Lavertue* v. *Niman,* 196 Conn. 403, 406–407, 493 A.2d 213 (1985); see also General Statutes § 46b-162.

having sexual relations with another man prior to, during and following the time of conception. The plaintiff testified that she had not had sexual intercourse with anyone other than the defendant during the period of conception, although on cross-examination she made one statement which contradicted her earlier testimony.

Paternity actions are civil proceedings and the general rules governing civil actions apply. *Robertson* v. *Apuzzo,* 170 Conn. 367, 372, 365 A.2d 824, cert. denied, 429 U.S. 852, 97 S. Ct. 142, 50 L. Ed. 2d 126 (1976). Thus, "the plaintiff in a paternity proceeding need only prove her case by a fair preponderance of the evidence. *Terrasi* v. *Andrews,* 3 Conn. Cir. Ct. 449, 453, 217 A.2d 75, cert. denied, 153 Conn. 729, 214 A.2d 130 (1965)." *Lavertue* v. *Niman,* 196 Conn. 403, 407, 393 A.2d 213 (1985). A determination that a defendant is the father of a child is factual and may be rejected on appeal only if it is clearly erroneous or otherwise contrary to law. See Practice Book § 4061; *Schaffer* v. *Schaffer,* 187 Conn. 224, 225, 445 A.2d 589 (1982).

The record in this case, like most paternity cases, reveals conflicting testimony of the parties and of their witnesses. During cross-examination, the plaintiff was asked an isolated question regarding whether she had had sexual relations with anyone other than the defendant during the time that the child was conceived. She responded, "Yes, I did." When viewed in isolation, this testimony appears damaging to the plaintiff's case. This question was asked, however, in the midst of cross-examination regarding the surname of the woman with whom the plaintiff was sharing an apartment at the time of conception. It would not have been unreasonable for the jury to conclude, therefore, that the plaintiff was confused when she answered this particular question. Moreover, at four separate times during the

trial, the plaintiff denied having had sexual relations with anyone other than the defendant at the time of conception.[2] Thus, the jury was presented with one inconsistency within the plaintiff's testimony, and it was incumbent upon them to weigh her testimony as a whole.

The plaintiff's older sister testified that the plaintiff had stated to her that the defendant was the father of the child. A former boyfriend with whom the plaintiff had lived for approximately one year testified, however, that he had had sexual relations with the plaintiff during the time of conception. He also testified that the plaintiff told him that he was the father of her child. Thus, there was testimony buttressing both the testimony of the plaintiff and of the defendant. "Nothing

---

[2] On cross-examination, the plaintiff also testified as follows:

"Q. Now with respect to [another man], is it your claim that you did not have sexual relations with him during the months of February and March of 1979?

"A. Yes. . . .

"Q. Just so that everybody is clear, it is your testimony that you did not have sexual relations with [another man] during February of 1979, is that correct?

"A. Yes, it is."

On direct examination of the plaintiff, the following exchange took place:

"Q. During that period of time, we are talking about the middle of February to the middle of March of 1979, were you having sexual relations with any man?

"A. Just one.

"Q. Just one man?

"A. Yes."

Later, this exchange occurred:

"Q. And it is your testimony during that period of time you only had sexual relations with the defendant.

"A. Right.

"Q. No one else?

"A. No.

"Q. Do you know that you are under oath and that there are penalties for lying?

"A. Yes

"Q. You only had sex with Gerald Natalino during that time?

"A. Yes."

in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded their testimony." *Schaffer* v. *Schaffer,* supra, 227. Thus, it was up to the jury to weigh the testimony of the various witnesses and to reach a conclusion based on all the evidence. We will not retry the facts.

## I

The defendant claims that the inconsistencies in the plaintiff's testimony and the conflicting testimony of others rendered the evidence insufficient to support the jury's verdict. He asserts, therefore, that he was entitled to a directed verdict and the granting of his motion to set aside the verdict.

Directed verdicts are not favored and should be granted only when the jury could not reasonably and logically reach any other conclusion. In considering a trial court's refusal to direct a verdict, we must review its action in the light most favorable to the plaintiff. *Puro* v. *Henry,* 188 Conn. 301, 303, 449 A.2d 176 (1982).

The defendant mistakenly relies on *Yarmark* v. *Strickland,* 193 So. 2d 212, 213 (Fla. 1967), cited in *Gelinas* v. *Nelson,* 165 Conn. 33, 35, 327 A.2d 565 (1973). In *Yarmark,* the plaintiff unequivocally admitted having had sexual intercourse with another man as well as with the defendant during the medically recognized time in which conception occurred, yet judgment entered for the plaintiff. The Appellate Court of Florida reversed, stating that since the plaintiff admitted having intercourse with a man other than the defendant, it was improper for the trier to guess which of the two men was the father and to determine parentage based on such speculation. *Yarmark* v. *Strickland,* supra. In this case, however, the plaintiff repeatedly denied having relations with anyone other

than the defendant during the time of conception. Thus, proof that she had sexual relations with any other man rested upon the testimony of the defense witnesses and the jury's weighing of the conflicting evidence. In situations such as this, it is proper for the case to go to the jury. Thus, the defendant's reliance on *Yarmark* is misplaced, and it was proper for the trial judge to deny the motion for a directed verdict and to let the case go to the jury.

As to the defendant's claim that the trial court erred in refusing to set aside the verdict, there is no demonstration on the record that the jury was swayed by prejudice, passion, mistake or corruption. The jury must determine the credibility of the witnesses and weigh it accordingly. When there are issues on which there can be a reasonable difference of opinion, the jury's conclusion must stand, even if we might have concluded differently. *Trzcinski* v. *Richey,* 190 Conn. 285, 298–99, 460 A.2d 1269 (1983). The jury in this case, after weighing the evidence and finding facts, could have found by a preponderance of the evidence that while the plaintiff had been intimate with another man prior to and subsequent to the period of conception, the defendant was the only one with whom she had had sexual intercourse during the period of conception. The trial court did not abuse its discretion in refusing to set aside the verdict.

## II

The second issue is whether the court erred in refusing to charge the jury in accordance with the defendant's request to charge. This issue can be broken into three parts: (1) the charge on inconstancy of accusation; (2) the charge on impeachment by a prior inconsistent statement; and (3) the charge on sexual relations with others at the time of conception.

The defendant requested the following charge: "If you find, for example, that the plaintiff has been inconsistent in her claims that Gerald Natalino is the father of the child and that she has sometime in the past claimed that another is the father, you can consider that fact in passing on the credibility of the complainant." The trial court's actual charge was: "If you find from all the evidence that a witness who has appeared before you at this trial gave testimony which is inconsistent with their prior statement, you may consider that fact in determining the weight you will give to the testimony of that witness."

The test of a proper jury charge is whether it fairly presents the case to the jury, in such a way that injustice was not done under the rules of law to either party. *Mack* v. *Perzanowski,* 172 Conn. 310, 313, 374 A.2d 236 (1977). A trial judge need not charge in the exact words requested as long as the charge is stated correctly and adequately states the law. *Tripp* v. *Anderson,* 1 Conn. App. 433, 438, 472 A.2d 804 (1984). The charge as given clearly informed the jury that any inconsistencies in a witness' testimony could be considered as a factor when assessing that witness' credibility.

The defendant's supplemental request to charge was captioned "impeachment by prior inconsistent statement" and related to alleged prior inconsistent statements made by the plaintiff on her sworn answers to interrogatories.[3] We note that the prior inconsistent

[3] The supplemental request was as follows:

"Impeachment by Prior Inconsistent Statements.

"Where the testimony of a witness at trial is inconsistent with a prior statement of the witness, and that prior statement was given under oath, subject to the penalty of perjury at another trial or at a hearing, deposition or other proceeding, you may consider the prior statement both in evaluating the credibility of the witness, and as evidence of any fact contained in the prior statement. Should you find the prior statement to be inconsistent with the witness's testimony, you may consider the statement in

statement of the plaintiff referred to by the defendant in his supplemental request to charge would have been harmful to the defendant had it been considered by the jury as substantive evidence as well as for its impeachment value.[4] Although the defendant's supplemental request to charge stated that he wished the prior inconsistent statement to be used "both in evaluating the credibility of the witness, *and as evidence of any fact contained in the prior statement,*" (emphasis added) the claim on appeal is limited to the use of the statement for impeachment purposes. Clearly, this statement could have been considered substantively,[5] yet this is

---

determining what credence to be given to the witness's present testimony in court. Should you find the prior statement to be truthful, you may consider it as evidence in this case."

The trial court's charge was as follows: "Now I will explain to you the rule as to inconsistent statements of witnesses. If you find that a witness is proven or admits having made a statement out of court which is inconsistent with his or her testimony on the stand you can consider their statement not as evidence of the truth of what is said but as evidence which shows an inconsistency between the claim of the particular witness at the time of the statement was made and his or her claim when he or she took the stand. That you should consider as bearing upon his or her credibility.

"If you find from all the evidence that a witness who has appeared before you at this trial gave testimony which is inconsistent with their prior statement, you may consider that fact in determining the weight you will give to the testimony of that witness."

[4] The prior inconsistent statement at issue was the plaintiff's answer to an interrogatory. That question and answer are as follows:

"22. Did you state to any person since you became pregnant that a person other than the defendant was the father of this child.

"A. No."

The use of this statement as substantive evidence would have harmed the defendant because it would have weakened his claim that the plaintiff was inconsistent in her accusation that he was the father of the child.

[5] The plaintiff's answer to the interrogatory could have been admitted as substantive evidence as a prior inconsistent statement of a *party* who is a witness in the proceeding; *State* v. *Whelan,* 200 Conn. 743, 749 n.5, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986); or as a "prior written inconsistent statement, signed by the declarant, who has personal knowledge of the facts stated, when the declarant testifies at trial and is subject to cross-examination." Id., 753. Here, the

not the defendant's claim on appeal. The defendant claims only that the court erred in refusing to charge the jury pertaining to its "right to consider those inconsistencies as they affected her credibility." We conclude that the trial court's charge on the use of prior inconsistent statements properly informed the jury as to its right to consider the plaintiff's prior inconsistent statements as they affected her credibility.

Finally, the defendant challenges the court's refusal to charge the jury that "if you find that the plaintiff . . . had sexual relations with men other than the defendant at or about the time she claims to have conceived the child, *in the absence of other evidence,* it would be improper to find that Gerald Natalino is the father." (Emphasis added.) There was substantial evidence in this case that contradicted the defendant's contention that the plaintiff had had sexual relations with others at the time of conception, and it was within the province of the jury to weigh that evidence. This charge, therefore, was inapplicable. See *Yarmark* v. *Strickland,* supra.

There is no error.

In this opinion the other judges concurred.

---

plaintiff signed the answers to the interrogatories, clearly had personal knowledge of the facts stated therein, and testified and was cross-examined at trial.