CARYN DeMACE *v.* ARTHUR WHITTAKER
(12434)

PETERS, C. J., HEALEY, SHEA, DANNEHY and SANTANIELLO, Js.

Argued March 12—decision released June 4, 1985

*Claudine Siegel,* with whom were *Julia Bradley* and, on the brief, *Robert Lessler,* for the appellant (defendant).

*Joseph X. Dumond,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, *Seymour P. Dunn* and *Rochelle Homelson,* assistant attorneys general, for the appellee (state).

PETERS, C. J. The principal issue on this appeal, like that decided today in *Lavertue* v. *Niman,* 196 Conn. 403, 493 A.2d 313 (1985), is whether indigent defendants in state-sponsored paternity proceedings have a constitutional right to court-appointed counsel. At the insistence of the state, and with the state's aid, the plaintiff Caryn DeMace brought suit against the defendant Arthur Whittaker, naming him the father of her

child Cami M. DeMace. The defendant denied his paternity but, after a trial to the court without the assistance of counsel, was found guilty. The court ordered him to pay $25 per week child support until the child's eighteenth birthday and $5 per week until $18,489.80 in arrearage, lying-in expenses and costs had been repaid to the state. The defendant appeals this judgment. Because the plaintiff and her child were recipients of public assistance when this action commenced, the attorney general is a party to the proceedings; see General Statutes § 46b-160; and he is the only party defending this appeal.

The procedural background relevant to this appeal is as follows. From May, 1981, through November, 1983, the defendant retained a private attorney to represent him in this action. In May, 1981, he filed a motion for blood grouping tests pursuant to General Statutes § 46b-168.[1] The trial court, *Nigro, J.,* granted the motion and ordered the defendant to pay the cost of the tests. The defendant raised no claim of indigency and did not object when ordered to pay the cost of the initial blood grouping tests.[2] Approximately a month

---

[1] "[General Statutes] Sec. 46b-168. (Formerly Sec. 52-184). BLOOD TESTS WHEN PATERNITY IS IN DISPUTE. ASSESSMENT OF COSTS. In any proceeding in which a question of paternity is an issue, the court, on motion of any party, may order the mother, her child and the putative father or the husband of the mother to submit to one or more blood grouping tests, to be made by a qualified physician or other qualified person, designated by the court, to determine whether or not the putative father or the husband of the mother can be excluded as being the father of the child. The results of such tests shall be admissible in evidence only in cases where such results establish definite exclusion of the putative father or such husband as such father. The costs of making such tests shall be chargeable against the party making the motion, provided if the court finds that such party is indigent and unable to pay such costs, such costs shall be paid by the state. If the costs of making such tests are paid by the state and the party making the motion is subsequently adjudicated to be the father of the child, such party shall be liable to the state for the amount of such costs."

[2] *Little* v. *Streater,* 452 U.S. 1, 101 S. Ct. 2202, 68 L. Ed. 2d 627 (1981), was decided on June 1, 1981. The defendant made his motion for blood

before the start of trial, the court granted defense counsel's motion to withdraw due to irreconcilable differences with his client. Trial commenced on December 13, 1983. On that day, the defendant, appearing pro se for the first time, moved for the appointment of counsel, claiming indigency. He filed an accompanying financial affidavit which reflected a net weekly income of $150 and weekly expenses of $155. The defendant also moved the court to order supplemental blood grouping tests at Hartford Hospital and to order the state to pay the cost of the tests. The trial court, *Maiocco, J.*, denied the motions concerning the blood grouping tests but took no action on the motion for the appointment of counsel, and made no finding as to indigency.

The events at the trial itself can be briefly summarized. The plaintiff testified that the defendant was the father of her child. She stated that she and the defendant had lived together following her daughter's birth and that the defendant had contributed small sums of money for the child's support. On cross-examination, the defendant questioned the plaintiff briefly concerning her relationships with other men, but elicited little information. In addition to herself, the plaintiff presented two witnesses. An investigator with the department of human resources testified that the plaintiff and her daughter had received over $18,000 in assistance from the state and that the defendant was employed and earning an average net weekly salary of $137. A neighbor of the plaintiff then testified that the defendant had told her he was the child's father. The defendant did not testify on his own behalf. The only witness he called was his sister, who stated that she had twice

grouping tests on May 27, 1981. The trial court issued its order for the defendant to pay the cost of the tests on June 18, 1981, by which time, based on the holding in *Little*, the defendant could have claimed indigency and asked the state to pay for the tests. Public Acts 1981, No. 81-433, §§ 1, 3, which amended General Statutes § 46b-168 to reflect the holding in *Little*, took effect on July 1, 1981.

heard the plaintiff say that the defendant was not the father of her child. The court found the defendant guilty and examined him concerning his financial situation before making an award of child support.

The defendant raises four claims of error on appeal. He asserts that the trial court erred: (1) in failing to appoint counsel to represent him; (2) in denying his motion for supplemental blood grouping tests; (3) in failing to strike inadmissible test results from the court file; and (4) in hearing the state's evidence on expenses before making a finding as to the defendant's guilt or innocence.

In support of his first claim of error, the defendant argues that he was constitutionally entitled to court-appointed counsel. We have addressed that argument fully in *Lavertue* v. *Niman,* supra. That decision, however, is not dispositive of this appeal because a paternity defendant's right to court-appointed counsel depends upon the defendant's indigency. The trial court in this case made no finding as to indigency and we cannot presume indigency from the record before us.

It is clear that the defendant was, at one point, able to afford private counsel, and that he was employed. On the other hand, his financial affidavit reflects weekly expenses in excess of weekly net income. This record might have permitted the trial court to conclude either that the defendant was or was not indigent. If the defendant had not appeared pro se, we might preclude him from raising the issue of indigency on appeal because he did not press at trial for a ruling on his motion for the appointment of counsel. Without counsel, however, the defendant cannot be faulted for having failed to recognize that the filing of his motion might not be brought to the court's attention without further action on his part. We therefore remand the case to the trial court for a resolution of the question of

indigency which will, in turn, be dispositive on the issue of whether the defendant is entitled to a new trial. See *Lavertue* v. *Niman,* supra.

The defendant's remaining three claims of error do not depend upon a determination of indigency for their resolution. We address these claims in light of the possibility that the defendant, if he is found not to have been indigent, will not be entitled on that ground to a new trial.

The defendant argues that the court erred in denying his motion for blood tests at Hartford Hospital. He maintains that the additional tests were necessary because the original tests, which were performed at Stamford Hospital, were insufficient to exclude his paternity. The state argues that the court was within its discretion in denying the motion because allowing further testing would have necessitated a continuance of the trial. We conclude that, given the evidence before it, the court's ruling was not in error.

In his brief, the defendant presents a detailed scientific explanation in support of his claim for additional blood tests. He explains that Hartford Hospital investigates paternity using seven tests while Stamford Hospital uses only four tests. The more extensive testing performed at Hartford leads to more accurate results. If the defendant is not the father, there is a 91 percent chance that the Hartford tests would reveal this fact, while there is only a 54.72 percent chance that the Stamford tests would do so. See *Little* v. *Streater,* 452 U.S. 1, 6–8, 101 S. Ct. 2202, 68 L. Ed. 2d 627 (1981).

Unfortunately, the defendant was unable to articulate this argument in response to the trial court's inquiry about the need for additional tests, and as a result the court was not made fully aware of the rela-

tive reliability of each test.[3] We cannot conclude, therefore, that the court erred in basing its decision to deny the defendant's motion on the fact that further testing would delay the trial. The defendant was, in effect, asking for a continuance. "We will find error in the grant or denial of a motion for continuance only if a clear abuse of the trial court's discretion is shown. *Ridgeway* v. *Ridgeway,* 180 Conn. 533, 538, 429 A.2d 801 (1980)." *Chaplin* v. *Balkus,* 189 Conn. 445, 449, 456 A.2d 286 (1983). The case had been pending for over two years. The Stamford blood tests were performed at the beginning of this period and the defendant, who was assisted by counsel until a month before trial, could have moved for additional tests at any time.

The defendant's third claim is that it was error for the trial court not to strike inadmissible blood grouping test results from the court file. The Stamford results were inadmissible because they did not exclude the defendant as a possible father. See General Statutes § 46b-168. The state attached the results to a document entitled "Compliance with Motion for Blood Grouping Test," which was submitted to the court in November, 1981. The defendant, at that time represented by counsel, made a motion to strike the test results from the file. On the trial court docket sheet, the motion was marked "off will reclaim" and the record reflects no attempt by the defendant to reclaim the motion. The test results were never admitted into evidence and the defendant has not demonstrated either that the trial judge was aware of the results in the file or that he was improperly influenced by them. Under these circumstances, the defendant's claim of error must fail.

[3] We are sympathetic to the defendant's position that it is difficult for a pro se litigant to make such a complex scientific argument, and that is one reason why the defendant, if he is indigent, will have an opportunity to make this argument with the assistance of counsel. See *Lavertue* v. *Niman,* 196 Conn. 403, 493 A.2d 313 (1985).

The defendant's final claim is that the trial court erred in permitting the state, prior to a judicial determination of guilt, to introduce evidence that it had incurred over $18,000 in child support, lying-in expenses and costs. The defendant argues that this procedure violated General Statutes § 46b-171, which provides: "If the defendant is found guilty, the court shall order him to stand charged with the support and maintenance of such child . . . and the court shall ascertain the expense of lying-in and of support and maintenance of the child until the time of rendering judgment . . . ." It is clear that a defendant can only be ordered to pay support after he is found guilty. See *State* v. *Wolfe,* 156 Conn. 199, 203, 239 A.2d 509 (1968). Since the defendant failed to argue at trial that the statutory sequence was mandatory, and did not then object to the state's arguably premature presentation of evidence about its expenses, his claim cannot prevail. Although the better procedure would have been for the trial court to hear evidence of expenses following a determination of guilt, the defendant has not met his burden of proving that the court's failure to do so was harmful error. See *State* v. *Conroy,* 194 Conn. 623, 627, 484 A.2d 448 (1984); *State* v. *Januszewski,* 182 Conn. 142, 174, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981).

The case is remanded for further proceedings in accordance with this opinion. If the trial court finds that the defendant was indigent, the judgment must be set aside and a new trial ordered. If the trial court finds that the defendant was not indigent, the judgment must stand unless the defendant successfully appeals the finding of nonindigency.

In this opinion the other judges concurred.