[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO REARGUE
On August 31, 2000 this court after a full hearing denied the defendant's pro se motion to modify and pursuant to the State's contempt citation held the defendant in contempt of court for failure to pay the support order. The defendant filed a motion to reargue both decisions. The Attorney General moved to strike the defendant's motion claiming he had no standing to move to reargue the motion to modify. The court has heard the parties and briefs have been filed. CT Page 3062
The Commissioner of Social Services commenced this mater with a paternity petition brought pursuant to General Statutes § 46b-162. The petition sought establishment of parentage and support for a child Randy Lee Ronald Robinson, born May 13, 1995 to the named plaintiff mother Beryll Robinson. Both parties appeared for trial on September 26, 1995. The court, Ginsberg, F.S.M, found the defendant to be the child's father and entered a temporary support order of $5.00 per week. On January 9, 1996 a final support order was issued for $51.00 per week support plus $5.00 per month on the arrearage.
That order has not been modified. The defendant commenced a motion to modify in September 1996 (#104) which apparently was never decided. He filed another in March 1998 (#105). He filed a third motion (#107) which was dismissed by the court, Langley, F.S.M. on August 20, 1999. In October 1999 the defendant filed his fourth motion to modify (#112). The motion states the following basis: "I am disabled."
Meanwhile in April 1999 the State served a contempt citation (#106) on the defendant claiming nonpayment of the support order. The court appointed Attorney Sean Crowshaw to represent the defendant pursuant to Practice Book § 25-63. On February 22, 2000 Attorney Rhonda Morra was appointed as counsel and guardian ad litem of the minor child by the court, Alvord, F.S.M. After numerous continuances both the contempt citation and the motion to modify were heard by this court simultaneously pursuant to General Statutes § 46b-8 on August 31, 2000. The motion to modify was denied. The respondent was found in contempt for failure to pay the support order. The defendant was ordered to make a $100 lump sum payment on or before September 7, 2000 and to keep the support enforcement division and both attorneys informed of his circumstances including medical reports. it is that judgment that the defendant moves to reargue.[1]
As a preliminary matter, the State claims "the appointment has no standing to file or participate in any modification" (sic). Apparently the State is attempting to articulate an objection to the defendant's court-appointed counsel representing him on the motion to reargue as it pertains to the denial of the motion to modify. Since the State's claim implicates "standing" the court must first address this issue.
"[A] trial court has a responsibility to inquire into and to evaluate carefully all substantial complaints concerning court-appointed counsel."State v. Robinson, 227 Conn. 711, 726, 631 A.2d 288 (1993). "The extent of that inquiry, however, lies within the discretion of the trial court."State v. Marsala, 59 Conn. App. 135, 144 ___ A.2d ___ (2000); State v.Hansen, 39 Conn. App. 384, 398-99, 666 A.2d 421, cert. denied,235 Conn. 928, 667 A.2d 554 (1995). CT Page 3063
"Since at least 1917 [Connecticut] has recognized an indigent's right, in limited circumstances, to the assistance of counsel." Gipson v.Commissioner of Correction, 54 Conn. App. 400, 410, 735 A.2d 847 (1999);State v. Hudson, 154 Conn. 631, 635, 228 A.2d 132 (1967); Public Acts 1917, ch. 225. Connecticut "was the first state to adopt the public defender system." State v. Hudson, supra, 154 Conn. 635. Public Acts 1917, ch. 225, § 1, required the judges of the Superior Court to appoint an attorney to act "in defense of all persons charged with crime in said court when such person is without funds sufficient to employ counsel for such defense." See also Public Acts 1921, ch. 129, § 1.
Both the federal and state constitutions require the government, either explicitly or implicitly, to provide indigent criminal defendants with counsel during court proceedings; Gideon v. Wainwright, 372 U.S. 335,83 S.Ct. 792, 9 L.Ed.2d 799 (1963); to provide indigent criminal defendants with counsel in criminal appeals; Swenson v. Bosler, 386 U.S. 258,87 S.Ct. 996, 18 L.Ed.2d 33 (1967); to provide procedural due process.Fasulo v. Arafeh, 173 Conn. 473, 378 A.2d 553 (1977). The State must provide indigent defendants with counsel in paternity actions. Lavertuev. Niman, 196 Conn. 403, 493 A.2d 213 (1985).
"In addition, Connecticut provides a statutory right to habeas counsel, which further serves to protect the interest of an individual who is convicted of a crime. General Statutes § 51-296 (a). The principal purpose of the writ of habeas corpus `is to serve as a bulwark against convictions that violate fundamental fairness.' Lozada v.Warden, 223 Conn. 834, 840, 613 A.2d 818 (1992). Defendants in this state, therefore, have the right to counsel in proceedings that exist specifically to ensure that the individual's conviction was correct and proper; at trial, on a first appeal as of right and on a writ of habeas corpus." Gipson v. Commissioner of Correction, 54 Conn. App. 400, 419,735 A.2d 847 (1999).
"The due process clauses of the state and federal constitutions require that one subject to significant deprivation of liberty or property must be accorded adequate notice and a meaningful opportunity to be heard."Middletown v. von Mahland, 34 Conn. App. 772, 778, 643 A.2d 888 (1994);Counsel on Probate Judicial Conduct re: James H. Kinsella, 193 Conn. 180,207, 476 A.2d 1041 (1984); Sager v. GAB Business Services, Inc.,11 Conn. App. 693, 695, 529 A.2d 226 (1987). The fourteenth amendment to the United States constitution provides that the "[s]tate [shall not] deprive any person of life, liberty, or property, without due process of law. . . ." Tedesco v. Stamford, 222 Conn. 233, 241, 610 A.2d 574
(1992). "[A] state may not, consistent with due process of law, create the conditions that will strip an individual of an interest protected CT Page 3064 under the due process clause." In re Valerie D., 223 Conn. 492, 534,613 A.2d 748 (1992).
"Due process analysis begins with the identification of the life, liberty or property interest at stake." State v. Campbell, 224 Conn. 168,181, 617 A.2d 889 (1992), cert. denied ___ U.S. ___, 113 S.Ct. 2365,124 L.Ed.2d 271 (1993). "Liberty interests protected by theFourteenth Amendment may arise from two sources — the Due Process Clause itself and the laws of the States." Id, 182; Middletown v. von Mahland,34 Conn. App. 772, 779, 643 A.2d 888 (1994).
It is axiomatic that in a civil contempt hearing in which the possibility exists that an incarceration may result, the defendant's liberty interest is at stake and therefore he is constitutionally entitled to court-appointed counsel. "The due process clause of thefourteenth amendment to the United States constitution guarantees the right to appointed counsel to any indigent civil contemnor who might be incarcerated. Ridgway v. Baker, 720 F.2d 1409, 1413 (5th Cir. 1983);United States v. Bobart Travel Agency, Inc., 699 F.2d 618, 620 (2d Cir. 1983); Mastin v. Fellerhoff, 526 F. Sup. 969, 973 (S.D. Ohio 1981); see also Lake v. Speziale, 580 F. Sup. 1318, 1341-42 (D.Conn. 1984). This right to counsel is merely a logical extension of the right to counsel in criminal cases in which an accused is incarcerated. Ridgway v. Baker,
supra; United States v. Bobart Travel Agency, Inc., supra; see alsoArgersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530
(1972); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799
(1963). The courts' recognition of a due process right to counsel in civil contempt cases in which the contemnor might be imprisoned reflects a judgment that "it is the defendant's interest in personal freedom, and not simply the special Sixth and Fourteenth Amendments' right to counsel in criminal cases, which triggers the right to appointed counsel. . . ."Mastin v. Fellerhoff, supra; see also Lassiter v. Department of SocialServices, 452 U.S. 18, 25, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); In ReGault, 387 U.S. 1, 34-42, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1966); Ridgwayv. Baker, supra." Emerick v. Emerick, 28 Conn. App. 794, 797-98,613 A.2d 1351 (1992).
In family contempt matters in Connecticut, this right is codified in General Statutes § 46b-231 (m)(7) and in Practice Book § 25-63
(a), which provides:
"(a) A person who is before the court in a civil contempt proceeding involving the failure to comply with the order of a judicial authority in a family matter and who faces potential incarceration shall be advised of his or her right to be represented by counsel and his or her right to court appointed counsel if he or she is indigent. If the person is unable CT Page 3065 to obtain counsel by reason of his or her indigency he or she shall have counsel appointed to represent him or her unless:
"(1) He or she waives such appointment pursuant to Section 25-64; or (2) At the time of the application for the appointment of counsel, the judicial authority eliminates incarceration as a possible result of the proceeding and makes a statement to that effect on the record."
"[D]efendant's right to court-appointed counsel depends upon the defendant's indigency." DeMace v. Whittaker, 196 Conn. 413, 417,493 A.2d 219 (1985). Absent a waiver,[2] the defendant's indigency appears to be the only limiting factor. Even elimination of the threat of incarceration limits the defendant's ability to request court-appointed counsel only if it is removed at the time of the application for theappointment of counsel.
It is clear, however, that indigency and a contempt citation do not entitle a person to indefinite and unlimited representation at taxpayers' expense. The constitutional right to court-appointed counsel lasts only as long as the defendant is indigent and a contempt citation is pending. This was recently codified in the rules as Practice Book § 25-63
(c), which states: "Any attorney appointed to represent the contemnor shall represent such contemnor only on the contempt, and shall not be appointed for any other purpose."
The Attorney General would interpret this clause to preclude the court-appointed counsel from any action on behalf of the defendant other than the contempt hearing itself. This interpretation is not consistent with the purpose of the rule. The rules committee promulgated this rule primarily in response to dilatory motions filed by some court-appointed attorneys at taxpayer expense. The rule does not and can not preclude an attorney from competently, diligently and zealously representing his client as he is ethically required to do. Rules of Professional Conduct 1.1, 1.3, 3.1 and 3.2.
What the rule does do is limit the State's financial obligation to the contempt proceedings. This is clear from the commentary: "The Judicial Branch is only obligated to pay for services on a contempt, and counsel should be compensated for representation on the contempt." W. Horton 
K. Knox, Practice Book Annotated, author's comment to § 25-64. In any event there is an orderly process whereby bills of court-appointed counsel are reviewed and audited by the Judicial Branch. General Statutes § 51-9. The court has no reservations regarding the propriety of the Attorney General or any other officer of the court alerting the court to facts which would mitigate against appointment of counsel, such as clear evidence that the defendant is not indigent. However, once the initial CT Page 3066 appointment is made the court is less than comfortable with counsel delving into such matters which are at most m the discretion of the trial court, and in reality are handled as auditing issues by the judicial branch. In particular it would be unseemly to encourage actions by one counsel which may have a chilling effect on the party opponent's right to counsel.
In this particular case, the court agrees with the defendant that the State's Motion to Strike is a particularly inappropriate vehicle with which to raise the issue. Motions to Strike are provided in Practice Book § 10-39, and, in family cases, the nearly identical Practice Book § 25-16. The rule appears to provide a method to contest a complaint, cross complaint or answer. It is not apparent that it is an appropriate response to a motion. Furthermore, the five enumerated causes to provoke a motion to strike all sound in questions of legal sufficiency or improper joinder.
The State concedes that if "counsel is proceeding pro bono or under a separate arrangement with the defendant, he may certainly legally proceed." There is no authority that supports the claim that the defendant is under any obligation to disclose or confirm such an arrangement to the court, much less to a party opponent. The Attorney General's continuing pursuit of this issue is particularly inappropriate since this court in approving a prior motion of counsel to expend greater than twenty hours, specifically granted the motion "limited to restrictions in the practice rule."
Finally, the court also agrees with the defendant that the dispositive issue is whether the defendant has standing not whether the attorney has standing. There are no grounds to disqualify this attorney from filing any appropriate pleadings.[3] Such counsel, as an officer of the court, is bound by the practice rules, and the fee schedule promulgated by the judges[4] as to what he bills the State. Carraway v. Freeman, 5 S.M.D. 340, 344-58 (1991); General Statutes § 51-9.
For the foregoing reasons the motion to strike is denied.
The court now turns to the less challenging task of considering the defendant's motion to reargue. "The purpose of a reargument is . . . to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked, or that there has been a misapprehension of facts." Jaser v.Jaser, 37 Conn. App. 194, 202, 655 A.2d 790 (1995) (Internal quotation marks and citation omitted). The issues that the defendant raises in his motion were all heard and thoroughly considered by the court in the August 31, 2000 hearing. CT Page 3067
A review of the court file demonstrates that the defendant has attempted to avoid his support obligations by claiming disability since the very inception of the case.[5] For example the clerk's notes of a hearing on November 9, 1995 indicate the court, Ginsberg, F.S.M., ordered a continuance to allow the defendant to provide "letter indicating doctor's recommendation on ability to do work [and] proof of application to SSI." There were numerous previous motions to modify. The defendant has been singularly unsuccessful in persuading the court or the Social Security Administration that he is disabled.
The medical evidence submitted does not support his claimed disability. Although several documents allude to his being unable to work they are based on his own subjective complaints. Perhaps most telling are the comments by the doctor on Respondent's Exhibit C: "Patient seeks a note from me saying he cannot work and I've told him that based on my exam I see no reason why he cannot . . ." In fact Exhibit D, a note from the Knox Foundation described him as a "hard worker and dependable."
All of the claims, evidence and law posited by the defendant were considered and decided by the court on August 31. The "`strong reasons' on which granting reargument should be predicated are here absent." Haylev. Kentucky Fried Chicken, Corp., superior court, judicial district of New Britain, doc. no. CV96-0474970 (Gaffney, J. May 19, 1999); Ryan v.Fairchild Finance Corp. 14 Conn. L. Rptr. 74 (1995); Milano v. Beedle, 14 S.M.D. ___ (2000).
Accordingly, the motion for reargument is denied.
BY THE COURT
Harris T. Lifshitz Family Support Magistrate
 FEES FOR COUNSEL
(Effective October 1, 1995) Counsel for Indigent Respondents Facing Potential Incarceration in Civil Contempt Proceedings Involving their Failure to Comply with a Court Order in a Family Relations Case
The fees for all counsel appointed to represent indigent respondents facing potential incarceration in civil contempt proceedings involving their failure to comply with a court order in a family relations case shall be based upon the following schedule:
(a) Non-Court Time
 • $25.00 per hour for preparation on each case.
 • Travel time in the course of case preparation to court or elsewhere, other than the attorney's office, may be included in the above computation.
 • The attorney must itemize all time spent in the preparation of the case.
 • Preparation charges for a case are not allowed on any date for which a hearing is scheduled on that case.
 • Court approval in advance shall be required before payment for hours worked in excess of 20 hours is authorized.
 (b) Court Time
 • $55.00 for the first hour or any portion thereof for one or more court hearings.
 • $39.00 for the second hour or any portion thereof for one or more court hearings.
 • $22.00 for each subsequent hour or portion thereof for one or more court hearings, subject to a maximum per diem payment of $182.00.
CT Page 3070
 • Court time shall be construed to include time spent in the courthouse interviewing clients and awaiting the call of the case. Travel time to and from the courthouse shall not be allowed in the above computations.
 (See § 484A and § 484B of the Practice Book.)